Ruth G. McGILL, M.D., et
al., Appellants,

v.

J. Willis JOHNSON, III, Appellee.

No. 3-88-209-CV.

Court of Appeals of Texas,
Austin.

Aug. 9, 1989.

Rehearing Denied Sept. 20, 1989.

Mary J. Clariday, Thompson & Knight, Dallas, Stanley M. Johanson, Vinson & El-kins, Austin, for appellants.

Jack W. Lawter, Jr., Fulbright & Jawor-ski, Houston, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

The trial court concluded that certain contested language in a 1944 will created only a contingent remainder and that the open mine doctrine applied to oil and gas leases executed by the testamentary trust-ee as well as to leases signed by the testa-tor. We agree and will affirm the trial court's summary judgment.[1]

## BACKGROUND

J. Willis Johnson, Jr. (Testator), died in 1955, leaving a substantial estate. He was survived by his two sisters, his second wife, and his son, J. Willis Johnson, III (Johnson).

In his will,[2] the Testator created a trust for his son, authorized the trustee to exe-cute oil and gas leases, and provided for the outright bequest of the "Junction Ranch" to his son upon his thirtieth birth-day. The will does not contain a residuary clause.

The seventh section of the will provides for the termination of the trust upon the son's thirty-fifth birthday. If at that time the son had a "living child ... born in lawful wedlock," he would take all of the trust property outright. The testator next provided for the disposition of his property in the event his son did not have a child upon his thirty-fifth birthday or if he died without a surviving child.

It is this portion of the will that is in dispute. The third paragraph of the sev-enth section consists of one 350-word sen-tence:

If my son J. Willis Johnson, III lives to reach the age of thirty-five years and if at the time he reaches the age of thirty-five years he does not then have living a child, direct issue of his body born in

1. The rules for appellate review of a trial court's grant of summary judgment are well known. We first determine whether a disputed material fact issue exists. We accept as true the non-movant's version of the facts shown by the record and the admissible summary judgment proof. Every reasonable inference is indulged in favor of the non-movant and any doubt re-solved in his favor. The movant has the burden of showing that there is no genuine issue of material fact on any essential element of the non-movant's case and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex. 1985); *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867 (Tex.1984). *See generally,* Hittner, *Summary Judgments in Texas,* 22 Houston L.Rev. 1109 (1985).

2. Johnson also left three codicils to his will, but only the first codicil is of interest to this appeal.

lawful wedlock, then under those conditions and at that time there shall vest in my said son the full and complete title to all the personal property then constituting any part of the trust estate held by the Trustee under this will and there shall vest in him for the term of his natural life a life estate in all the real estate (the Junction Ranch is disposed of otherwise above and is not included here) then held by the Trustee as any part of the trust estate under this will, with the remainder over in said real estate at the death of my said son (subject to the proviso contained in the latter part of this sentence) passing share and share alike unto my sisters, Ruth J. Gordon and Mary B. Hall, and in case either of said sisters then be deceased such remainder here passing to such deceased sister shall pass per stirpes to her then living direct lineal descendants share and share alike, provided however that if my said son after said life estate has vested in him upon his reaching the age of thirty-five years does have a child, direct issue of his body born alive in lawful wedlock, then at such time as such child may be born the remainder in said lands herein left to my two said sisters and their direct lineal descendants shall fail, and at that time said remainder shall vest in my said son J. Willis Johnson, III and the full fee simple title to all said lands thereby at that time shall become vested in him with no character of remainder in anyone else whomsoever.

One sister, Ruth Gordon, died in 1982, survived by a daughter, Ruth G. McGill. Ruth Gordon devised her property to her grandchildren, Ruth G. McGill, M.D., and John Gordon McGill (the McGills), the appellants. The other sister, Mary B. Hall, died in 1984 without any surviving children. Under her will, she divided her property into two trusts, one for the benefit of Ruth G. McGill, for life and one for the benefit of Johnson for life, and on the death of either, to their children, or if none, to the other trust. However, Ruth G. McGill disclaimed all of her interest in the Mary B. Hall estate.

Johnson filed identical petitions in the District and County Courts of Tom Green County. Johnson sought a declaratory judgment that Mary B. Hall's remainder under Testator's will lapsed upon her death and passed to him by intestacy. The McGills contested Johnson's interpretation of the will and counterclaimed for damages due to waste by Johnson under oil and gas leases.

The parties signed an agreed order setting up separate but simultaneous district and county court proceedings presided over by one judge. The judge entered identical partial summary judgments in Johnson's favor. He interpreted the disputed language in section seven of Testator's will to have created a contingent remainder in favor of his sisters and concluded that Mary B. Hall's share lapsed upon her death and passed by intestacy to Johnson. The judge also held that the open mine doctrine applied to proceeds from the leases and that no waste occurred. He then entered final judgments which severed the construction issues and waste claims from any other issues. (This appeal concerns only the district court judgment. This Court dismissed the McGills' appeal of the county court at law judgment for procedural failures.)

## CONTENTIONS ON APPEAL

The McGills bring thirteen points of error. We have grouped their complaints into four areas: our court's jurisdiction of the appeal; the trial court's interpretation of the will as devising a contingent remainder which lapsed upon Mary B. Hall's death; the trial court's conclusion that the open mine doctrine applied to leases executed by the Testator and trustee, and the trial court's apportionment of royalties at the expiration of the trust.

## JURISDICTION

In their first point the McGills challenge our jurisdiction in this cause. They claim that the trial court's order of severance and final judgment was *not* final because the clerk did not set up a separate cause, but rather, entered the judgment in the original cause. We disagree. The or-

der of severance and final judgment states that the contingent remainder interest issues and waste issues concerning leases executed by the Testator and trustee are severed from other causes of action, and that "[t]he clerks shall docket the severed matters determined in this Final Judgment separately from all other causes of action, claims and defenses asserted in these cases and shall take such other action as is appropriate to effectuate this severance." The order of severance and final judgment was filed under the cause number of the original suit. Although the appellate record does not show that the clerk severed the matters and docketed them under a separate cause number, this omission is immaterial to this appeal.

Texas R.Civ.P.Ann. 301 (Supp.1989) provides that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law." The familiar rule concerning summary judgments is that a summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless the trial court orders a severance of that phrase. *Pan American Petroleum Corp. v. Texas Pacific Coal & Oil Co.*, 159 Tex 550, 324 S.W.2d 200, 200–201 (1959). The judgment here disposed of all parties and issues, and ordered a severance. It was thus a final, appealable judgment. We overrule the McGills' first point of error.

(In their thirteenth point the McGills argue that the county court's summary judgment is void for lack of subject matter jurisdiction. Because we have dismissed the appeal of the county court judgment, we need not address this point.)

## WILL INTERPRETATION

The McGills and Johnson urge diametrically opposed interpretations of section seven of the will. First, the McGills say the Testator created a vested remainder subject to divestment, and, alternatively, that the Testator created a class gift to his sisters and their lineal descendants. Johnson, on the other hand, argues that the Testator created only a contingent remain-

der, and that Mary B. Hall's remainder lapsed upon her death. He also disagrees that the Testator created a class gift.

Determining the testator's intent is the primary objective in interpreting a will. *Powers v. First National Bank of Corsicana*, 138 Tex. 604, 161 S.W.2d 273, 281 (1942). In order to determine the testator's intent, the will must be construed as a whole. *Republic National Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39, 43 (1955). When the testator executes a codicil, the will and codicil must be construed together. *Unitarian Universalist Service v. Lebrecht*, 670 S.W.2d 402, 404 (Tex.App.1984, writ. ref'd n.r.e.). If the will is ambiguous, evidence of the circumstances surrounding the execution may be considered to determine the testator's intent. *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579, 581 (1955).

Considering the will and codicils as a whole, we believe the Testator intended to devise specific gifts—not a class gift—to Mary B. Hall and Ruth Gordon. The will unambiguously states: "with the remainder ... passing share and share alike unto my sisters, Ruth J. Gordon and Mary B. Hall...." Courts have consistently held that " 'where legatees are named as individuals and are also described as a class, the gift by name ordinarily constitutes a gift to individuals, the class description being added merely by way of identification.' " *Benson v. Greenville Nat. Exchange Bank*, 253 S.W.2d 918 (Tex.Civ. App.1952, writ ref'd n.r.e.).

This will can be distinguished from *Perry v. Hinshaw*, 633 S.W.2d 503, 505 (Tex. 1982), because it does not contain words of survivorship modifying the specific gifts. *See also White v. Moore*, 760 S.W.2d 242, 243 (Tex.1988). In *Perry*, the will stated that on the death of the life tenant, certain real property "be divided among the *surviving* sisters and brothers of myself and my beloved husband in the following manner: to my sister [naming her] one-half (½); and the remaining half to be divided equally, share and share alike, among the surviving brothers and sisters of my beloved husband [naming them]" (emphasis added).

633 S.W.2d at 504. The language in this will is materially different from *Perry;* as in *Benson,* the Testator unambiguously made specific gifts to Mary B. Hall and Ruth Gordon.

■ We next consider whether the Testator intended to create a contingent remainder or a vested remainder subject to divestment. In making this determination, we recognize that "the distinctions drawn between conditions precedent and conditions subsequent become quite tricky." Dukeminier & Johanson, Family Wealth Transactions: Wills, Trusts, Future Interests & Estate Planning, Ch. 11 § C at 700 (1972). Nonetheless, we must attempt to apply the accepted rules of construction to the language at hand:

> The rule for determining whether a remainder is vested or contingent is thus stated by Gray in his work on The Rule Against Perpetuities: "If the conditional element is incorporated into the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested."

*Guilliams v. Koonsman,* 154 Tex. 401, 279 S.W.2d 579, 582 (1955).

The original will and first codicil contain language pertaining to the remainder. The critical language is the parenthetical phrase and the two conditions found in the latter part of section seven:

> with the remainder over in said real estate at the death of my said son (*subject to the provision contained in the latter part of this sentence*) passing share and share alike unto my sisters, Ruth J. Gordon and Mary B. Hall, and in case either of said sisters then be deceased such remainder here passing to such deceased sister shall pass per stirpes to her then living direct lineal descendants share and share alike, provided however that if my said son after said life estate has vested in him upon his reaching the age of thirty-five years does have a child, direct issue of his body born alive in lawful wedlock, then at such time as such child may be born the remainder in said lands herein left to my two said sisters and their direct lineal descendants shall fail, and at that time said remainder shall vest in my said son J. Willis Johnson, III and the full fee simple title to all said lands thereby at that time shall become vested in him with no character of remainder in anyone else whomsoever. (Emphasis added.)

In his first codicil, the Testator provided:

> In subdivision or paragraph numbered 7 of my last will I provide that under the *contingency* therein set forth my sisters Ruth J. Gordon and Mary B. Hall or their direct lineal descendants shall receive the remainder in real estate upon the termination of the life estate therein provided for, and I provide that under the *contingency* therein named they shall receive the trust property then held by the Trustee. I amend those provisions referring to my two sisters and their direct lineal descendants so as to provide that in the event more than one of my own children take under my will and codicil and any of such children die under any of the conditions specified in my last will for the taking by my sisters or their descendants upon the death of J. Willis Johnson, III, then my surviving children or their descendants first shall take, subject to all the terms and provisions of my will and this codicil, the interest of my child so dying, with my sisters and their direct lineal descendants taking only upon the death of the last survivor of my own children, in the event such survivor dies under the same conditions as my will provides that they shall take upon the death of J. Willis Johnson, III (Emphasis added.)

Johnson and the McGills urge completely different interpretations. The McGills argue that the sisters' remainder is subject to two conditions subsequent and is thus a vested remainder subject to divestment. The two conditions subsequent are that Johnson not have children and that each sister or her lineal descendants survive. The McGills argue that the Testator did not create a contingent remainder because the granting clause contains no conditions. In-

stead, the conditions *follow* the granting clause.

Johnson points out that the McGills' argument ignores the parenthetical phrase, "subject to the proviso contained in the latter part of this sentence." Johnson argues that the parenthetical phrase makes the remainder subject to the condition precedent that he not have any children. He bolsters this interpretation by the references to "contingency" in the first codicil, and by the references to "vesting" in the original will. The will states that Johnson's life estate vests at the termination of the trust, and if he has children, "said remainder shall vest in my said son." But the will does not describe the sisters' remainder as vested.

Construing the will and codicils as a whole, we agree with Johnson that as a matter of law the Testator intended to create a contingent remainder. In reaching our conclusion, we have determined that the will in this case is unlike the one in *Lowrance v. Whitfield*, 752 S.W.2d 129 (Tex.App.1988, writ. denied). As in this will, the testator in *Lowrance* created a life estate and remainder interest. Paragraph V of the will in *Lowrance* provided: "Subject to the life estate [to my wife] ..., *and subject to the hereinafter provided condition*, it is my will and desire that all of the real estate ... shall pass to and vest in fee simple in my three (3) children...." (Emphasis added.) Paragraph VII provided:

As a condition hereof in vesting the fee simple title to real estate herein bequeathed and dismissed [sic] to my said children, or their children, as the case may be, Testator hereby expressly provides that in the event any child should sell, or attempt to sell ... any interest bequeathed and dismissed [sic] to any child or children during the lifetime of my wife ..., then, in such event, the part of portion of my said estate so bequeathen and dismissed [sic] to said child or children shall *divest* of and from said child and children and thereupon pass to and become the property of my said wife.... In such event, said interest or interests shall *divest* of and from said child or children and thereupon become

*vested* in my said wife.... (Emphasis added.)

The placement of the conditional phrase in *Lowrance* is similar to that here. As in our case, the remaindermen in *Lowrance* urged that the testator's will created a vested remainder, whereas the life tenant urged that the testator created a contingent remainder. The court held that the will was ambiguous because "[t]he phraseology used in paragraphs V and VII appear to conflict and leave in doubt the true intention of the testator." 752 S.W.2d at 133. Although the conditional phrase in paragraph V suggested an intent to create a contingent remainder, the divestment language in paragraph VII suggested an intent to create a vested remainder.

Unlike *Lowrance*, the will here does not contain any conflicting phraseology. The parenthetical phrase in section seven creates a contingent remainder. This interpretation is bolstered by the first codicil which refers to the "contingency." We hold that the Testator unambiguously created a contingent remainder. The contingent remainder is subject to two conditions precedent: (1) the parenthetical phrase incorporates the condition that Johnson not have children, as discussed above; (2) the other condition of survivorship, as discussed below.

## LAPSE

The trial court concluded that the contingent remainder interest to Mary B. Hall and her lineal descendants lapsed upon her death and passed by intestacy to Johnson. The pertinent language in section seven of the will is as follows:

with the remainder over in said real estate at the death of my said son ... passing share and share alike unto my sisters, Ruth J. Gordon and Mary B. Hall, and in case either of said sisters then be deceased such remainder here passing to such deceased sister shall pass per stirpes to her then living direct lineal descendants share and share alike....

■ The parties' arguments on this point turn on their interpretation of the phrase "then be deceased." The McGills say "then be deceased" refers to the date the trust terminates while Johnson urges "then be deceased" refers to the date of his own death. The McGills argue that Mary B. Hall's remainder did not lapse because her remainder could be defeated only if she died without surviving descendants prior to the date the trust terminated. Johnson argues that the remainder did lapse because the survival of Mary B. Hall or her lineal descendants was a condition precedent, and thus her contingent remainder failed.

We agree with Johnson that the will establishes survival as a condition precedent. Construing the language used within the four corners of the will, *Frost National Bank of San Antonio v. Newton*, 554 S.W.2d 149, 153 (Tex.1977), we believe "then be deceased" clearly refers to "the death of my said son." The quoted portion of the will conditions the passing of the remainder interest upon survival, and we do not have to wait until Johnson's death to know that the contingency will not occur, because Mary B. Hall died in 1984 survived by no direct lineal descendants. *Compare Pickering v. Miles*, 477 S.W.2d 267 (Tex. 1972); *Guilliams v. Koonsman*, 154 Tex. 401, 279 S.W.2d 579 (1955).

Because Testator created a contingent remainder, and Mary B. Hall's remainder lapsed, we overrule the McGills' second through seventh points of error.

### OPEN MINE DOCTRINE

The Testator executed ten oil, gas, and mineral leases before his death. The trustee executed two leases during the trust. Production from these leases continued until the termination of the trust and vesting of Johnson's life estate in 1970. When the trust ended, Johnson received the bonuses and royalties from the leases, and deposited them into his personal bank account, for his personal use. The provisions of the will and codicil relating to the leases are: (1) section five of the will which sets up the discretionary trust, directing the trustee "out of the income and earnings of the property held in trust by it [to] defray all expenses incident to the support, maintenance and education"; section five empowers the trustee to execute oil, gas and mineral leases; (2) section three of the first codicil, which further instructs that the trustee "at least as often as semi-annually, shall pay over to [Johnson] all net revenues from the trust property held by it"; (3) section seven of the will provides for termination of the trust, at which time Johnson takes fee simple title to *all* the trust property if he has a child, but if not, takes all the personal property outright, and only a life estate in the real property.

The McGills counterclaimed in the original suit in part for waste. The trial court held, however, that the open mine doctrine applied to the leases executed by the Testator and to those executed by the trustee, and that the McGills had no claim against Johnson for proceeds under those leases. The court severed the waste issues concerning leases executed after the trust ended.

The McGills assert that the open mine doctrine does not apply to leases executed by the Testator or by the trustee because the Testator's intent was to restrict Johnson's enjoyment of the proceeds. As evidence of his intent, the McGills point to the existence of the trust, which intervened before Johnson's life estate. Johnson, on the other hand, argues that the open mine doctrine applies to the leases executed by the Testator and trustee, because the leases were "open mines" when his life estate vested. Johnson argues the Testator clearly intended that he should enjoy the benefits, because the Testator authorized the trustee to execute leases and pay the revenues to Johnson, and because the Testator provided that at the termination of the lease Johnson would acquire all the personal property, which includes royalties.

■ We will first consider whether the open mine doctrine applies to the ten leases executed by the Testator. As a general rule, a life tenant who dissipates the corpus of the estate is liable to the remaindermen for waste. Royalties and bonuses are part

of the corpus, and a life tenant is only entitled to interest from these. The open mine doctrine is an exception to the general rule. "When the settlor of a trust or a testator had opened the mine, and he gave no directions as to the impounding or expenditure of the proceeds from the mine, the law presumed an intent that the life tenant could expend or dispose of them as the settlor or testator could." *Clyde v. Hamilton,* 414 S.W.2d 434, 439 (Tex.1967). The open mine doctrine does not apply, however, when the testator expresses a contrary intent. *Mitchell v. Mitchell,* 157 Tex. 346, 303 S.W.2d 352, 355 (1957).

■ Because the Testator did not express a contrary intent, the open mine doctrine clearly applies to the ten leases which he executed. What is not so clear is whether the open mine doctrine applies to the two leases executed by the trustee. This question has not been decided in Texas.[3] However, other jurisdictions apply the open mine doctrine to leases executed by the trustee when the settlor has given the trustee explicit power to execute leases. *See* Annot. 18 A.L.R.2d 98, 166. We believe the open mine doctrine should apply in such instances and we so hold. We overrule the McGills' eighth and ninth points.

## APPORTIONMENT OF ROYALTIES

The McGills also assert that when the trust ended, Johnson was not entitled to all royalties received during the term of the trust. They claim that the open mine doctrine does not apply to the royalties accrued during the trust, and that since the Testator did not provide for the distribution of the proceeds, the Texas Trust Code applies. Johnson claims that under the terms of the will, when the trust terminated, he inherited a fee simple estate in all the personal property, which would include the royalties as cash on hand held by the trust.

Section 113.107 of the Texas Trust Code (1974) provides for apportionment of bonuses and royalties between corpus and income when the trust fails to do so. Under § 113.107(d), 27½% of the proceeds are applied to principal, and 72½% are applied to income. The Trust Code provisions do not apply here, however.

■ We are not concerned with apportionment of income and principal during the trust, but rather with Johnson's right to personal property after the trust expired. Under the terms of the will, when the trust ended Johnson was entitled to a fee simple estate in the personal property comprising the trust. Royalties are considered personalty when they accrue and the oil and gas has been severed from the land. *Lone Star Gas Co. v. Murchison,* 353 S.W.2d 870, 879 (Tex.Civ.App.1962, writ ref'd n.r.e.). In any event, once the accrued royalties had been received by the trust and deposited in the trust accounts, there can be little argument that these cash deposits were personal property held by the trust which were left outright to Johnson when the trust terminated.

We overrule the McGills' tenth point of error. Since we have followed the trial court in applying the open mine doctrine, we need not address on the McGills' eleventh and twelfth points complaining of the trial court's failure to grant their partial summary judgment and failure to order their requested discovery concerning segregated remaindermen funds.

## CONCLUSION

We overrule each of the McGills' points and affirm the judgment of the trial court.

---

**3.** The only Texas case tangentially relevant is *Avis v. First Nat. Bank of Wichita Falls,* 141 Tex. 489, 174 S.W.2d 255 (1943). In *Avis* the "sole question ... [was] whether under the terms of the will, [the trustee] has the power to execute mineral leases...." 174 S.W.2d at 258. The will in *Avis* gave the trustee explicit power to sell, but not to lease the land. The Court held the trustee was also authorized to execute leases. The Court stated in dicta that "[a]n oil and gas lease executed by the trustee under the terms of this will would not be one executed in the interest of the life tenant." 174 S.W.2d at 258. The McGills argue that *Avis* stands for the proposition that the Open Mine Doctrine does not apply to leases executed by the trustee. We disagree. *Avis* did not decide the effects of a trustee's lease, but whether a trustee had the power to lease.