

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00060-CV

ESTATE OF MARJORIE B.
ABSHIRE, DECEASED

----------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In this action to determine the validity of a holographic will and codicil, Appellants Ernestine Nichols and Travis Avenue Baptist Church appeal the trial court's summary judgment in favor of Appellees Patricia Kallenberger Singleton; Kent Kallenberger; Kreg Kallenberger; Martha Luvene Bryant Dickinson; Emma Lu Bryant Magee; Margaret Diane Bryant Gordon; Kinney Bryant; and Jim

[1]*See* Tex. R. App. P. 47.4.

Dabney, as Attorney in Fact for Wanza Josephine Thomas Dabney. Appellants contend in five issues that the trial court incorrectly interpreted the will and codicil or that the will and codicil are ambiguous. Appellants also challenge the trial court's award of attorney's fees to Appellees. We reverse and remand.

## II. Background

Marjorie B. Abshire passed away on August 30, 2007. Abshire was Nichols's maternal first cousin (their mothers were sisters) and a member of Travis Avenue Baptist Church. Appellees are Abshire's paternal heirs at law.

On January 9, 2001, Abshire drafted, in her own handwriting, a holographic will. On January 17, 2001, she added a holographic codicil on the same page. In their entirety, the will and codicil state:

6111 Haley Lane
Fort Worth, TX 76132
January 9, 2001

To:    Ernestine C. Nichols
3820 Westerly
Fort Worth, Texas 76116

"Holographic Will of Marjorie B. Abshire"

I would like to make you administrator of my estate to serve as Independent Executor without bond or other form of security.

As of this date, January 9, 2001, there are no claims for any debt against me – house, car, and other purchases are free from debt. The only things I owe are current utilities and telephone accounts that are drafted from my bank account. * 1/17/01

I would like to make Page Nichols Nickell as alternative Executor with same powers and rights as Ernestine C. Nichols in case she does not survive me or is incapacitated to act in my behalf.

2

This will is revoking all others which have been destroyed.

Marjorie B. Abshire

*Just as a rough guide as to distribution of my estate, I would like Ernestine C. Nichols to have half of my funds, one-fourth to Margaret C. Dennis, and one-fourth to Travis Avenue Baptist Church which will not include annuities that I have designated to other charities.

Marjorie B. Abshire

On October 22, 2007, the trial court entered an order admitting the will and codicil to probate and appointing Page Nickell, named as successor independent executor in the will, as independent executor. The document admitted to probate as the will and codicil were found among Abshire's financial papers in an envelope labeled, "Holographic Will of Marjorie Abshire." Also in the envelope were three handwritten notes about making a will, three lists of assets, and newspaper clippings relating to preparation of wills.

In March 2009, Nickell filed an action for declaratory judgment to construe the will and identified twenty-eight interested parties. Seven of the Appellees filed a general denial and have contended that although the will is valid, the codicil is invalid because it contains precatory language and does not purport to distribute any portion of Abshire's estate.

Appellants and Appellees filed cross-motions for summary judgment, and the trial court denied Appellants' motion and granted Appellees' motion. In its order granting Appellees' motion for summary judgment, the trial court made four findings:

3

1. The purported codicil dated January 17, 2001, is unambiguous as a matter of law.

2. The following sentence in the purported codicil is precatory:

Just as a rough guide as to distribution of my estate, I would like Ernestine C. Nichols to have half of my funds, one-fourth to Margaret C. Dennis, and one-fourth to Travis Avenue Baptist Church which will not include annuities that I have designated to other charities.

3. The word "funds" in the above-quoted sentence does not include real property.

4. The purported codicil did not make an effective disposition of property. Therefore, the decedent died intestate with regard to the disposition of her property.

The trial court also set aside the portion of its October 22, 2007 order admitting the codicil to probate. In its final judgment, the trial court reiterated its summary judgment findings and awarded attorney's fees totaling $238,421.49 to Appellants, Nickell, and Appellees' attorney, with Appellees' attorney receiving $151,498.74 of that amount. This appeal followed.

### III. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every

4

reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## IV. Will Construction

Appellants contend in their first three issues that the trial court erred by granting summary judgment for Appellees. Specifically, they argue that the trial court erred by determining that the codicil failed because it contained precatory language and did not dispose of Abshire's property and by concluding that the term "funds" in the codicil did not include real property. Alternatively, Appellees contend in their fourth issue that the will and codicil are ambiguous.

### A. Applicable Law

In construing a will, the court's focus is on the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *In re Estate of Florence*, 307 S.W.3d 887, 893 (Tex. App.—Fort Worth 2010, no pet.). One of the strongest presumptions guiding the interpretation of wills is the disfavor of

5

any interpretation that would render the testator intestate as to any part of her estate. *McGill v. Johnson*, 799 S.W.2d 673, 676 (Tex. 1990).

> Under Texas law, several presumptions guide the interpretation of wills. A construction which would render the decedent intestate as to any part of his estate is not favored. If the language used is not free from doubt or ambiguity, then canons of construction may be resorted to, and that interpretation should be adopted which will uphold and not destroy the will.

*Id.* (citation omitted). "The fact that [a] testatrix left a will implies that she did not intend to die intestate." *Ferguson v. Ferguson*, 121 Tex. 119, 45 S.W.2d 1096, 1097 (1931); *see In re Estate of Rogers*, No. 04-06-00555-CV, 2007 WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.). For this reason, "[a] holographic will should be liberally construed to effect the testator's intent." *Trim v. Daniels*, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (citing *Lane v. Sherrill*, 614 S.W.2d 619, 622 (Tex. 1981); *Gilkey v. Chambers*, 146 Tex. 355, 207 S.W.2d 70, 73 (1947)).

The testator's intent must be ascertained by viewing the will in its entirety. *Florence*, 307 S.W.3d at 893 (citing *Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 372 (Tex. App.—Fort Worth 2003, pet. denied)). If the will is unambiguous, a court should not go beyond specific terms in search of the testator's intent. *Lang*, 35 S.W.3d at 639. "[I]f [the testator's intent] can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument." *Welch v. Straach*, 531 S.W.2d

319, 321 (Tex. 1975) (quoting *McMurray v. Stanley*, 69 Tex. 227, 6 S.W. 412, 413 (Tex. 1887)).

Whether a will is ambiguous is a question of law for the court. *Steger*, 134 S.W.3d at 373. If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous, and the court should construe it as a matter of law. *Id.* A term is not ambiguous merely because of a simple lack of clarity or because the parties proffer different interpretations of a term. *Id.* Rather, a will is ambiguous only when the application of established rules of construction leave its terms susceptible to more than one reasonable meaning. *Id.* If a will is ambiguous, extrinsic evidence should be considered to ascertain the testator's intent. *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied).

## B. Discussion

The parties do not dispute that the January 9, 2001 will is valid. Rather, their dispute focuses on the validity of the January 17, 2001 codicil. According to Appellants, the codicil expresses Abshire's intent to leave fifty-percent of her estate to Nichols, twenty-five percent of her estate to the church, and twenty-five percent of her estate to Dennis.[2] Appellees contend, however, that the codicil fails because the language "just as a rough guide, I would like" is precatory rather

---

[2]Appellants also point out that Dennis predeceased Abshire, meaning that the bequest to Dennis failed and that Abshire's heirs at law will receive the twenty-five percent bequeathed to Dennis.

than mandatory and fails to dispose of Abshire's property. If the codicil is invalid, Abshire's entire estate passes by intestacy, and Abshire's heirs at law would receive all of Abshire's estate.

To determine whether particular words are precatory or mandatory, we look to the testator's expressed intent as evidenced by the context of the will and surrounding circumstances, "and words which are precatory in their ordinary meaning will nevertheless be construed as mandatory when it is evident that such was the testator's intent." *Wattenburger v. Morris*, 436 S.W.2d 234, 239 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.). Thus, although words such as "want," "wish," and "desire" are precatory in their ordinary and primary meaning, "they are often construed as mandatory when used in a will where it appears from the context or from the entire document that they are the expression of the testator's intention in disposing of his property." *First United Methodist Church of Marlin v. Allen*, 557 S.W.2d 175, 177 (Tex. Civ. App.—Waco 1977, writ ref'd n.r.e.) (citing *Bergin v. Bergin*, 159 Tex. 83, 315 S.W.2d 943, 947 (1958)); *see Thomasson v. Kirk*, 859 S.W.2d 493, 495 (Tex. App.—Houston [14th Dist.] 1993, writ denied); *Wattenburger*, 436 S.W.2d at 239. Moreover, a layperson "cannot be deemed to have used words in the same technical sense that the words might have if they were used by an attorney," and "[u]nder such circumstances, it is the duty of the court to make an effort to determine what was the actual intent of the testator." *Bergin*, 159 Tex. at 88–89, 315 S.W.2d at 946; *see Anderson v. Dubel*, 580 S.W.2d 404, 409 (Tex. Civ. App.—San Antonio

8

1979, writ ref'd n.r.e.) (noting that the testatrix "was an elderly person, not well educated, and not learned in the law").

The disputed codicil states:

> Just as a rough guide as to distribution of my estate, I would like Ernestine C. Nichols to have half of my funds, one-fourth to Margaret C. Dennis, and one-fourth to Travis Avenue Baptist Church which will not include annuities that I have designated to other charities.

Appellees contend that "just as a rough guide, I would like" is precatory, imposes no obligation, and is not an affirmative command or direction, and they point to two cases that hold certain language precatory. They rely on *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960), and *Haltom v. Austin Nat'l Bank*, 487 S.W.2d 201 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.). But each of these cases is distinguishable.

In *Huffman*, the relevant portions of the testator's holographic will stated: "The Rotary Apts. Inc. stock belonging to me has been handed to Myrtle and Lyter for what I lost them in the oil deal. . . . Please give part of the Rotary Apts. Income to Pat." 161 Tex. at 270, 339 S.W.2d at 886–87. The supreme court held that the will "simply did not bequeath the stock to Myrtle and Lyter" and that the request to "[p]lease give part of the [apartment] income to Pat" was "precatory *in light of the entire will*." *Id.* at 271, 339 S.W.2d at 887 (emphasis added). In other words, the will stated only that the stock had been *handed to* Myrtle and Lyter and did not otherwise express an intent to bequeath the stock to them upon the testator's death. *See id.*

9

In *Haltom*, the testator's holographic will stated:

> I, Wayman E. Adams, being of sound mind, will that in case of my death all property of which I am possessed go to my wife Margaret Boroughts Adams as long as she lives. And after her death if it has not been necessary to dispose of it would like our home at 2815 San Gabriel, Austin[,] Texas be given to the Texas Fine Arts Association for a small museum.

487 S.W.2d at 202. The court held that the words "would like" were precatory and not "words of command cloaked in the language of civility." *Id.* at 203. However, the testator did not, as Abshire did in this case, consistently use "would like" throughout his holographic will. Rather, the court stated, "That Adams knew how to use mandatory words is demonstrated in the first sentences of the will in which he 'willed' that all of his property pass to his wife for life." *Id.* Later in the will, however, Adams used the permissive "would like" when addressing the disposition of his home "if it ha[d] not been necessary to dispose of it," leaving discretion to others and expressing a future gift rather than a present testamentary disposition. *Id.*

In this case, the will is clearly titled the "Holographic Will of Marjorie B. Abshire," and Abshire consistently used the phrase "I would like" throughout her will and codicil when appointing the executor and alternate executor as well as when addressing the portions of her estate that named beneficiaries would receive upon her death.[3] Read in context rather than as an isolated phrase, "just

---

[3]It is not insignificant in our view that Appellees contest the "I would like" phrase in the codicil but do not contest the "I would like" phrase in the will that appoints the executor and alternate executor.

10

as a rough guide, I would like" does not, in our view, leave the distribution of Abshire's funds to the discretion of others. Rather, the entire will and codicil express Abshire's testamentary intent to leave all of her funds, with the exception of annuities designated to other charities, to three named beneficiaries, with Nichols receiving fifty percent and the church and Dennis each receiving twenty-five percent. To the extent that "just as a rough guide, I would like" arguably leaves discretion to others, that discretion relates not to whether the named beneficiaries would receive any portion of the estate but instead to the manner in which the executor would ensure that the three named beneficiaries receive their respective percentages. The codicil is not precatory and expresses Abshire's intent to dispose of her property. *See Bergin*, 159 Tex. at 89, 315 S.W.2d at 947 (holding that "I want" was not precatory in light of entire instrument); *Allen*, 557 S.W.2d at 177–78 (holding that "I have willed my home to [the church], but I want them to let L.D. Moore buy it for $10,000" was not precatory); *Wattenburger*, 436 S.W.2d at 240 (holding that "it is my desire" was not precatory). Thus, we hold that the trial court erred by finding that the codicil was precatory and did not dispose of Abshire's property.

We also hold that, as used in the codicil, the term "funds" is not ambiguous and includes Abshire's real and personal property. This court has previously noted that "[t]he word 'funds' in its broad meaning may include property of any kind" and that "[t]he expression, 'funds of an estate,' used in a will, may mean any property of a testator." *Goggans v. Simmons*, 319 S.W.2d 442, 445 (Tex.

11

Civ. App.—Fort Worth 1958, writ ref'd n.r.e.). Although the phrase at issue in *Goggans* involved the residuary clause of the holographic will and the disposition of the testator's real property was not at issue, the principle from *Goggans* and other cases applies here and requires that Abshire's will and codicil be interpreted in a manner that avoids descent by intestacy if a reasonable construction avoiding descent by intestacy is available. *Id.*; *see McGill*, 799 S.W.2d at 676 ("A construction which would render the decedent intestate as to any part of his estate is not favored."); *Trim*, 862 S.W.2d at 10 (stating that holographic wills "should be liberally construed to effect the testator's intent").

Reading the will and codicil together in their entirety and considering the surrounding circumstances including the label on the envelope in which they were contained together with other notes and lists of assets, the intent of Abshire, a layperson, can be ascertained to be that all of her estate, including real and personal property but excluding the annuities she had designated to other charities, pass to Nichols, Dennis, and the church in the designated percentages. *See Bergin*, 159 Tex. at 88, 315 S.W.2d at 946 (stating that a layperson "cannot be deemed to have used words in the same technical sense that the words might have if they were used by an attorney"); *Anderson*, 580 S.W.2d at 409. If we interpreted "funds" to not include Abshire's real property, an

12

additional portion of her estate would pass by intestacy.[4]  But because "funds" may be reasonably construed in light of the will and codicil in their entirety to include Abshire's personal and real property, we must adopt that construction. *See McGill*, 799 S.W.2d at 676.  We hold that the term "funds" is not ambiguous within the context of Abshire's will and codicil and that the trial court erred by finding that "funds" did not include Abshire's real property.  We sustain Appellants' first three issues.[5]

## V.  Attorney's Fees

Appellants contend in their fifth issue that the trial court erred by awarding attorney's fees to Appellees.  Civil practice and remedies code section 37.009 permits a trial court in a declaratory judgment action, in its discretion, to "award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).  Given our disposition of Appellants' first three issues, we sustain Appellants' fifth issue and remand this case so that the trial court may reconsider the recoverability of attorney's fees. *See Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337, 347 (Tex. App.—Dallas 2011, pet. filed) (reversing declaratory judgment and remanding for

---

[4]As we noted above, the devise to Dennis failed because Dennis predeceased Abshire, and the twenty-five percent bequeathed to Dennis passes to Abshire's heirs at law.

[5]We do not reach Appellants' alternative fourth issue in which they contend that the will and codicil are ambiguous.  *See* Tex. R. App. P. 47.1.

13

reconsideration of attorney's fees); *Hicks v. Castille*, 313 S.W.3d 874, 884 (Tex. App.—Amarillo 2010, pet. denied) (same).

## VI. Conclusion

Having sustained Appellants' first, second, third, and fifth issues, which are dispositive, we reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED:  August 18, 2011