Ruth G. McGILL, et al., Petitioners,

v.

J. Willis JOHNSON, III, Respondent.

No. C–9223.

Supreme Court of Texas.

Nov. 28, 1990.

Rehearing Overruled Dec. 31, 1990.

Luke Ashley, Dallas, Stanley M. Johanson, Austin, H.R. Wardlaw, III, San Angelo, George C. Chapman, Dallas, for petitioners.

L. Henry Gissel, Tom Alan Cunningham, Houston, W. Truett Smith, San Angelo, for respondent.

## OPINION

MAUZY, Justice.

This will construction case involves a dispute over the ownership of a remainder interest in certain real property and the application of the open mine doctrine. The petitioners appeal the trial court's declaratory judgment interpreting the will of J. Willis Johnson, Jr. (Testator). The trial court found 1) that the will created a remainder interest contingent upon the remaindermen surviving the life tenant, and 2) that the open mine doctrine applied to oil and gas leases executed by the testamentary trustee. The court of appeals affirmed the judgment. 775 S.W.2d 826 (1989). We reverse in part and affirm in part. We disagree that the terms of the will created a contingency based on survival. We agree, however, that the open mine doctrine is applicable.

The Testator was survived by his second wife, Richie Johnson, his son, J. Willis Johnson, III (Johnson), and his two sisters, Mary B. Hall and Ruth Gordon. The will created a trust for the benefit of Johnson and provided for termination of the trust when Johnson reached age forty [1]. Upon termination of the trust, Johnson would receive fee simple title in all the trust property if he had a then living child. If he did not have a then living child the will provided that Johnson receive title to all personal property of the trust, and that he receive a life estate in the real property with the remainder passing to Testator's sisters, Hall and Gordon. Johnson did not have a living child in 1970 when he reached age forty, and thus received a life estate in the real property. Hall died in 1984 and was survived by no lineal descendants. After Hall's death, Johnson secured a declaratory judgment holding that Hall's remainder interest lapsed at her death and passed to him by intestacy since the Testator's will contained no residuary clause. The court of appeals agreed and affirmed Johnson's declaratory judgment. The McGills, beneficiaries of Hall's estate, argue on appeal that Hall's remainder interest was not contingent upon her surviving Johnson.

### Will Interpretation

The intent of the Testator governs our interpretation of any will. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971). In this case, we must examine and decipher the effect of two conditions on Hall's remainder interest. The pertinent part of the will provides:

> If my son J. Willis Johnson, III lives to reach the age of [forty] years and if at the time he reaches the age of [forty] years he does not then have living a child, direct issue of his body born in lawful wedlock, then under those conditions and at that time there shall vest in my said son the full and complete title to all personal property then constituting any part of the trust estate held by the Trustee under this Will and there shall vest in him for the term of his natural life a life estate in all the real estate ... then held by the Trustee as any part of the trust estate under this will, with the remainder over in said real estate at the death of my said son *(subject to the*

1. The will provides that the trust terminate upon Johnson's thirty-fifth birthday. A subsequent codicil provided for termination when Johnson reached forty.

*proviso contained in the latter part of this sentence)* passing share and share alike unto my sisters, Ruth J. Gordon and Mary B. Hall, and *in case either of [my] said sisters then be deceased such remainder here passing to such deceased sister shall pass per stirpes to her then living direct lineal descendants share and share alike,* provided however that if my said son after said life estate has vested in him upon his reaching the age of [forty] years does have a child, direct issue of his body born alive in lawful wedlock, then at such time as such child may be born and the remainder in said lands herein left to my two said sisters and their direct lineal descendants shall fail, and *at that time said remainder shall vest in my said son J. Willis Johnson, III and the full fee simple title to all said lands thereby at that time shall become vested in him with no character of remainder in anyone else whomsoever.*

The codicil provides in part:

In . . . my last will I provide that under the contingency therein my sisters Ruth J. Gordon and Mary B. Hall or their direct lineal descendants shall receive the remainder in real estate upon the termination of the life estate therein provided for, and I provide that under the contingency therein named they shall receive the trust property then held by the Trustee . . . with my sisters and their direct lineal descendants taking only upon the death of the last survivor of my own children, in the event such survivor dies under the same conditions as my will provides that they shall take upon the death of J. Willis Johnson, III.

Johnson argues that Hall's interest is subject to two conditions precedent: 1) that Hall or her lineal descendants survive Johnson, and 2) that Johnson not have a child during his lifetime. The McGills argue that the first condition creates a vested remainder subject to divestment. They further submit that the classification of the second condition as a condition precedent or subsequent does not affect the outcome of the case since the condition has not occurred.

■ The first condition provides that if Hall died her remainder interest would pass to her lineal descendants. The court of appeals held that the remainder was a "contingent remainder" and could only vest at the time of Johnson's death because the gift language reads: remainder "at the death of my said son" to my sisters. We interpret "at the death of my said son" as referring only to the time of enjoyment or possession—not the time of vestment. *Rust v. Rust,* 147 Tex. 181, 211 S.W.2d 262, 267 (Tex.Civ.App.–Austin 1948), *aff'd,* 147 Tex. 181, 214 S.W.2d 462 (1948).[2] We fail to find any definite language in the will or codicil showing that the sisters' remainder interests were intended to "vest" only upon Johnson's death. Texas law favors a construction that allows vesting at the earliest possible time, and Texas courts will not construe a remainder as contingent when it can reasonably be taken as vested. *Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 891 (1948); *see Pickering v. Miles,* 477 S.W.2d 267, 270 (Tex.1972).

■ Furthermore, under Texas' rules of construction, if a condition precedes or is incorporated into the gift of the remainder, it is a condition precedent; but if the condition is added after a vested gift is made, the remainder is vested subject to divestment. *Pickering v. Miles,* 477 S.W.2d 267, 270 (Tex.1972). In the first condition the gift language, "remainder over . . . at the death of my son . . . unto my sisters," is followed by a separate clause containing the conditional language, "in case either of my sisters then be deceased such remainder . . . shall pass per stirpes to her then living direct lineal descendants." Under the rules of construction, this clause clearly creates a vested remainder subject to a condition subsequent.

**2.** The court held in *Rust* that "a devise by A to B for life with remainder *at his death* to C creates a vested remainder in C upon the death of A, subject to B's life estate," and that the words "at his death" denote the time when the right of possession or enjoyment of the estate begin—not when the remainder vests. *Rust v. Rust,* 211 S.W.2d at 267.

Under Texas law, several presumptions guide the interpretation of wills. A construction which would render the decedent intestate as to any part of his estate is not favored. *Rust*, 211 S.W.2d at 269. If the language used is not free from doubt or ambiguity, then canons of construction may be resorted to, and that interpretation should be adopted which will uphold and not destroy the will. *Id.* at 269. Since the construction of the will argued by Johnson leads to intestacy and the will is susceptible to another construction which avoids intestacy, then we construe the condition subsequent to be triggered only if Hall died before Johnson reached 40. That did not occur. Johnson turned 40 in 1970; Mary Hall did not die until 1984. This construction leads to the result that the testator intended to reach and the presumed intent that the testator intended to avoid intestacy by disposing of all of his property. Hall's interest passed under her will.

Finally, this result still leaves Hall and McGill's interest subject to the second condition subsequent, a condition which represents the testator's overriding intent that his son not have fee simple in the property at issue here unless he had a child. Johnson will take fee simple if and when he has a child born in wedlock; otherwise the land belongs to the testator's sisters and their descendents.

## Open Mine Doctrine

This case presents two issues of first impression regarding the open mine doctrine: 1) whether the open mine doctrine applies to leases executed by a trustee where the life estate does not start at the testator's death but is delayed by an intervening trust; and, 2) whether leases executed by a trustee are subject to the open mine doctrine after the trust terminates. The McGills claim that Johnson has committed waste by not sharing the proceeds from the leases previously collected. Specifically, they claim that Texas Trust Code section 113.107, which provides for the apportionment of bonuses and royalties between corpus and income, should apply.

Prior to his death, the Testator executed ten oil, gas, and mineral leases that were in effect on his death. The Testator's interest in the minerals subject to the leases were transferred to the Trust upon the Testator's death, with Johnson as the income beneficiary. While the Trust was in effect, the Trustee also executed two additional leases covering minerals held by the Trust. The Trust terminated when Johnson reached the age of forty on October 3, 1970. As was provided in the will and codicils, at the time the Trust terminated Johnson acquired a life estate in these minerals. After acquiring the life estate interest in the minerals, all bonus and royalty payments received by Johnson were spent as his own funds.

The open mine doctrine provides a limited exception to the general rule that a life tenant is liable to the remaindermen for waste if he uses the corpus of the estate. Texas courts have applied the open mine doctrine only to leases that the testator executed and that are in effect at his death. *Moore v. Vines*, 474 S.W.2d 437 (Tex.1971). The open mine doctrine rests on a presumption of intent that when the creator of the life estate gave no direction as to the disposition of the proceeds from open mines, he intended for the life tenant to have the same degree of control over such proceeds as that of the testator. The effect of the open mine doctrine is that all royalties, bonuses, and income derived from these royalties and bonuses is not treated as corpus of the life estate, but rather, belongs to the life tenant. *Clyde v. Hamilton*, 414 S.W.2d 434 (Tex.1967).

Without exception all of the Texas cases applying the open mine doctrine concentrate on the intent of the testator at the time of his death and the formation of the life tenancy. See *Thompson v. Thompson*, 149 Tex. 632, 236 S.W.2d 779 (1951); *Youngman v. Shular*, 155 Tex. 437, 288 S.W.2d 495 (1956). The Testator in the instant case intended that Johnson receive all of the personal property from the estate and use of the real property during his

lifetime.[3] At the time of the Testator's death there were ten oil and gas leases in effect and the will specifically provided that the Trustee have the power to execute other leases. In *Mitchell v. Mitchell*, 157 Tex. 346, 303 S.W.2d 352 (1957), the testatrix conveyed her undivided one-half interest in 400 acres to a trust and specifically provided for the distribution of the income and principal. The Court ruled that since the open mine doctrine is a presumption of intent, the rule cannot apply when it is clear that the testator intended that the life tenant not enjoy the income from an open mine. *Id.* 303 S.W.2d at 355. However, the Court stated that "[h]ad this will made a simple devise to certain designated parties for life, with remainder to other designated parties, the open mine rule of presumed intent would apply." *Id.* at 354. We hold that an intervening trust does not preclude the application of the open mine doctrine when the trust instrument gives the trustee explicit power to execute leases. See Annot. 18 A.L.R.2d 98, 166. Johnson has not committed waste and is entitled to all proceeds from the leases. The Testator intended that Johnson enjoy the benefits of the estate during his lifetime. *See St. Marks Episcopal Church v. Lowry*, 271 S.W.2d 681 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.).

▬ The court of appeals correctly concluded that section 113.107 of the Texas Trust Code does not apply. The provision did not apply during the period of the trust since the Testator specifically provided that Johnson would receive all revenues from the trust property. This provision of the Trust Code applies when the settlor or testator fails to designate how to distribute the income.

### Conclusion

Considering the will and its codicils in their entirety, the intent of the Testator is clear. If Johnson has a child, he obtains fee simple title to the real property. If he does not have a child, then he only owns a life estate, with the Testator's sisters or their descendants owning the remainder. We hold that Hall's remainder interest was not defeated by her death without lineal descendants. Instead, Hall's remainder interest passed under her will. The remainder interest is still subject to the second condition so that if Johnson ever fathers a child, the remainder will be defeated at that time. To rule, as the trial court and court of appeals did, that Johnson be granted a fee simple interest in the property without fathering a child frustrates the Testator's intent.

We hold, as a matter of law, that the Hall beneficiaries have a fee simple remainder interest subject to the condition subsequent that Johnson father a child during his lifetime. We further hold, however, that application of the open mine doctrine precludes any recovery for waste by the Hall beneficiaries. We reverse the summary judgment in favor of Johnson and render judgment in favor of the McGills, consistent with this opinion.

---

**3.** For example, section five of the will provides that the Trustee pay for the support and maintenance of Johnson "out of the income and earnings of the property held in trust." Section seven of the will conveys all of the personal property of the estate, which would include proceeds from any leases, to Johnson at the termination of the trust. Section three of the first codicil further instructs the Trustee "at least as often as semi-annually to pay over to [Johnson] all net revenues from the trust property held by it."