**James Price TURNER, Executor and Trustee of the Estate of James B. Turner, Deceased, Appellant,**

v.

**Glenda ADAMS, et al., Appellees.**

No. 08–92–00023–CV.

Court of Appeals of Texas, El Paso.

March 31, 1993.

Rehearing Overruled July 14, 1993.

Julia E. Vaughan, Jerry D. Zant, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellant.

Aubrey Edwards, Big Lake, Mark Edwards, Jones & Edwards, Sweetwater, for appellees.

Before PRESLAR, C.J. (Retired) and Barajas and Larsen, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a declaratory judgment wherein the trial court found that James B. Turner's share in a remainder, devised by will, had lapsed in favor of certain Appellees. Appellant, James Price Turner, Executor and Trustee of the Estate of James B. Turner, deceased, in two points of error, complains that the trial court erred by: (1) construing the remainder as "contingent"; and (2) finding valid a trust created pursuant to the will. We affirm in part and reverse in part the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Susan Patterson executed her Last Will and Testament (hereinafter "Will") on April 21, 1958. She died on October 26, 1972, having been survived by her husband, John Patterson, and several nieces and nephews, one of whom was James B. Turner (hereinafter "Turner"). Mr. and Mrs. Patterson had no children. Susan Patterson's Will, which was probated, provided that her husband would receive a life estate and that the remainder would be distributed to her nieces and nephews.

John Patterson, with the assistance of three of the remaindermen under the Will, created the Patterson/Belcher Trust (hereinafter "Trust") by agreement dated July 22, 1988, and attempted to fund the Trust with assets passing under his late wife's Will. John Patterson is the designated Settlor and three of the Appellees are Trustee of the Trust. Turner was not a party to the creation of the Trust, but was named as a beneficiary. The intent of the parties was to place John Patterson's interest under his wife's Will into the Trust; however, the interest of the remaindermen was not placed in trust.

Turner died within a few months of the creation of the Trust and not long after, a distribution was made to the beneficiaries. The Trustees construed the Will to exclude Turner because he did not survive John Patterson and, accordingly, no distribution was made to his estate.

Appellees filed a Petition for Declaratory Judgment on April 4, 1991 asking the court to construe paragraph FOURTH of the Will, and to find the Trust and the distributions made pursuant to the Trust valid.

## II. DISCUSSION

### A. Construction of Remainder Interest Created by the Will

In Appellant's first point of error, he asserts that the trial court erroneously construed the remainder interest created by Susan Patterson's Will as a "contingent interest."

Susan Patterson's Will first bequeathed a life estate in the income of her estate to her husband John Patterson.[1] Following this designation, her Will then created a remainder interest as follows:

FOURTH: Subject only to the foregoing provisions of this Will, I leave all of the rest, residue and remainder of my estate to my nieces and nephews, equally. In the event of the death of any of my nieces or nephews leaving a child or children surviving them, then the surviving child or children of each such deceased nephew or niece shall receive the share to which such deceased nephew would have been entitled, if living.

As noted above, James Turner was one of several nephews and nieces of Mrs. Patterson. The trial court construed the remainder to be "contingent," to be a gift to a "class" and further found that since James Turner died without issue, his interest passed to the other surviving nieces and nephews.[2] Thus, in the instant case, the central issue on review concerns when the class is to be ascertained and when the remainder is to vest.

Appellees maintain that the remainder interest vested upon the death of John Patterson (the life tenant) and further, that the remainder interest is contingent upon class members, i.e., nephews and nieces, surviving *with* issue. In the alternative, Appellees assert that even if the interest did vest at the death of *Mrs.* Patterson, it is nevertheless subject to complete defeasance if class members die without issue. Under the theories advanced by Appellees, Turner's share lapses either, (1) because he failed to survive John Patterson or (2) because he did not survive Mrs. Patterson with issue. Appellant, on the other hand, contends the class closed and the interest vested upon Mrs. Patterson's death, with only the right of possession being deferred until the death of her husband, John.

1. The language creating the life estate is clear and unambiguous, and the parties do not dispute that Mrs. Patterson did in fact devise a life estate to John Patterson. *Riedel v. Kerlick,* 474 S.W.2d 508, 512 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.).

2. It is clear, and the parties do not dispute that the bequest to the nieces and nephews is a "class" gift. See *Wilkes v. Wilkes,* 488 S.W.2d 398, 403 (Tex.1972) (a class is defined as a group of several persons who share the same description and have the same relationship to the testator or to each other); *Briggs v. Peebles,* 144 Tex. 47, 188 S.W.2d 147, 149–50 (1945) (an essential requisite of a gift to a class is that the number of persons in the class be uncertain when the gift is made); *Sanderson v. First National Bank in Dallas,* 446 S.W.2d 720, 724 (Tex. Civ.App.—Dallas 1969, writ ref'd n.r.e.) (uncertainty requirement may be satisfied by possibility of future increase or decrease in number of class).

 At the outset, we note that on review, this Court's interpretation of any will is governed by the intent of the testator. *McGill v. Johnson,* 799 S.W.2d 673, 674 (Tex.1990). Intent is "determined by the language employed in the conveyance, read as an entirety and in light of the circumstances of its formulation." *Rust v. Rust,* 147 Tex. 181, 211 S.W.2d 262, 266 (Tex.1948), *aff'd,* 147 Tex. 181, 214 S.W.2d 462 (1948). A construction which would render the decedent intestate as to any part of his estate is not favored. *McGill,* 799 S.W.2d at 676. Moreover, this Court will construe remainders to vest at the earliest possible time, unless a contrary intention is expressed, *Wilkes v. Wilkes,* 488 S.W.2d at 398, 401 (Tex.1972), and should not construe a remainder interest as contingent when it can reasonably be construed as vested. *McGill,* 799 S.W.2d at 675, *citing Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 891 (Tex.1948); *Pickering v. Miles,* 477 S.W.2d 267, 270 (Tex.1972).

 In determining whether a remainder is contingent or vested, this Court will look to when and how the gift is incorporated into the remainder. "If a condition precedes or is incorporated into the gift of the remainder, it is a condition precedent [i.e., a contingent remainder]; but if the condition is added after a vested gift is made, the remainder is vested, subject to divestment." *McGill,* 799 S.W.2d at 675 *citing Pickering,* 477 at 270. Although the Will in the instant case fails to contain specific language which would establish the point in time the remainder interest was to vest, it is clear no condition precedes or is otherwise incorporated into the gift of the remainder.

 In paragraph FOURTH, Mrs. Patterson initially conveys the remainder to her "nieces and nephews, equally" and

*then,* adds the clause addressing survivorship. Texas law provides that a devise by one to another for life, remainder at his death to a third person, conveys a vested, not contingent, remainder vested subject to divestment. *See McGill,* 799 S.W.2d at 675 *citing Rust,* 211 S.W.2d at 267.[3] Such an interpretation is in accord with other established Texas law which favors earliest possible vesting, and ordinarily concludes that a remainder interest vests at the testator's death, *Sanderson v. First National Bank in Dallas,* 446 S.W.2d 720, 723 (Tex.Civ. App.—Dallas 1969, writ ref'd n.r.e.).

A complete reading of the Will shows the total absence of language which would condition vestment of the remainder interest upon surviving John Patterson. *See Wilkes,* 488 S.W.2d at 400; *McGill,* 799 S.W.2d at 675. Absent such definite language which would require the remaindermen to survive John Patterson, the Will should not be read to require such survival as a condition precedent to vesting. *McGill,* 799 S.W.2d at 675. In *McGill,* the Texas Supreme Court held that a remainder interest vested at the death of the testator and not at the death of the life tenant despite a phrase in the will which read, remainder "at the death of my said son" to my sisters. The Court held the above language referred only to the time of possession and enjoyment—not the time of vestment. *McGill,* 799 S.W.2d at 675. Likewise, the complete absence of specific language in the instant case results in the interest vesting at Mrs. Patterson's death with only **enjoyment or possession** deferred until expiration of her husband's life estate.[4] See *McGill,* 799 S.W.2d at 675.

Appellees, citing *Wilkes,* 488 S.W.2d at 398–403, contend that a gift to a class, as in the instant case, requires a substantially

---

**3.** The *McGill* Court noted that "in *Rust* ... 'a devise by A to B for life with remainder *at his death* to C, creates a vested remainder in C upon the death of A, subject to B's life estate,' and ... the words 'at his death' denote the time when the right of possession or enjoyment of the estate begin—not when the remainder vests." *McGill,* 799 S.W.2d at 675 n. 2 *quoting Rust,* 211 S.W.2d at 267 (emphasis in *Rust* ).

**4.** An argument has been advanced that had Mrs. Patterson intended the remainder to vest upon her husband's death, that end could have been accomplished by the simple insertion of the words "to my nieces and nephews **who survive my husband.**"

different analysis.[5] Appellees' reliance on *Wilkes* however, is misplaced in that *Wilkes* is supportive of the general rule that early vesting becomes inapplicable *only* in circumstances where other expressed indicia of intent is found. See *Wilkes*, 488 S.W.2d at 401–402. Thus, despite reaching different results, the decisions in *Wilkes* and *McGill* can easily be harmonized insofar as each of these significant cases require the reviewing court to look to specific language, or the lack thereof, in determining when an interest vests.[6]

■ Additionally, it is the law in our jurisdiction that a class gift is presumed to vest at the death of the testator if no time for vesting is fixed by the will. *Houston v. Schuhmann*, 92 S.W.2d 1086, 1089 (Tex. Civ.App.—Amarillo 1936, writ ref'd). Where there is no express condition of survivorship, those persons coming within the class description at the testator's death take a vested interest. *Bufford v. Holliman*, 10 Tex. 560 (1853); *Caples v. Ward*, 107 Tex. 341, 179 S.W. 856 (1915). Accordingly, we find that the remainder interest vested upon the death of Mrs. Patterson and, thus, was not a "contingent interest." Moreover, class members alive at Mrs. Patterson's death immediately received a devisable, transferrable interest which could not thereafter be divested without otherwise sufficient indicia of intent by the testatrix. Accord, *Houston v. Harberger*, 377

S.W.2d 673, 678 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.).

■ When a gift is to a class, an additional and equally important issue to that of vesting must be examined—that of ascertainment or fixing of the class. Generally, as with vesting, a class is ascertained at the testator's death if consistent with a fair interpretation of the will. *King v. Howell*, 120 S.W.2d 298, 302 (Tex.Civ.App. 1938). However, as with vestment, if the testator's intent is that the class should be ascertained at a different time, that intent controls. *Houston v. Schuhmann*, 92 S.W.2d at 1086, 1089.

■ In the instant case, the Will is silent regarding the time for ascertainment, but when distribution is fixed for a time after the death of the testator, (here, postponed until expiration of the life estate), it is presumed that the class of beneficiaries is ascertained at the *time fixed for distribution*. *Id.*, at 1089. Therefore, in the instant case, the class will remain open to include after-born nieces and nephews, i.e., those born after the death of the testatrix, Mrs. Patterson, and those in esse at the death of John Patterson. *Id.* However, class members with vested interests do not drop out of the class.[7]

Having determined that the remainder vested at the death of Mrs. Patterson and that the class will be ascertained at John Patterson's death, the effect of the subse-

---

5. In *Wilkes*, the testatrix, through a complex series of bequests, created a testamentary trust which was to last "until the death of the last survivor" of five named life tenants. At the termination of the trust, the property was then to be divided among various beneficiaries, one third of whom were to be the will beneficiaries of Virginia Wilkes. In the event Virginia died intestate, the will further provided, alternatively, that this one third was to go "to her lineal descendants, if any." *Wilkes*, 488 S.W.2d at 401. Virginia did die intestate and thus the question of when the gift to the class of "lineal descendants" was to vest arose. In determining that the remainder interest of the "lineal descendants" vested at the termination of the trust (i.e., after the death of the last surviving life tenant), the court stated; "It is significant that distribution at trust termination is to be among the *then surviving* beneficiaries of this my will.'" *Id.* at 401.

6. In *McGill*, it is apparent the decision turned not on the nature of the beneficiaries (as a class or as individuals) but on the presence or absence of definite language specifying when the remainder would vest. *McGill*, 799 S.W.2d at 675. As the Court stated; "We fail to find any definite language in the will or codicil showing that the sisters' remainder interests were intended to "vest" only upon Johnson's [the life tenant's] death." *Id.*, at 675.

7. This interpretation is in accord with the Restatement of Property § 295, which discusses postponed gifts to a class, and the Restatement (Second) of Property discussing gifts to a class where a member dies after the dispositive effect of the instrument takes effect but before such class member is entitled to distribution. Restatement of Property § 295(a), illus. 1 (1940); Restatement (Second) of Property § 27.3 cmt. a, illus. 1 (1987).

quent survivorship clause must be addressed. Once again, following the clause devising the remainder, the Will reads as follows:

In the event of the death of any of my nieces or nephews leaving a child or children surviving them, then the surviving child or children of such deceased nephew or niece shall receive the share to which such deceased nephew or niece would have been entitled, if living.

The above clause is ambiguous to the extent that it does not specify in what period it (the clause) becomes operative. In other words, was this clause to be triggered only if a remainderman failed to survive Mrs. Patterson or is it also applicable when a remainderman predeceases John Patterson?

 Generally, when a class member predeceases the testator, their share lapses in favor of the other surviving class members. *Gregg v. Jones*, 699 S.W.2d 378, 379 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). But, where, as here, death of a class member occurs after the effective date of the instrument but prior to distribution, that class member's interest passes through his estate, *unless* the will provides otherwise. Restatement (Second) of Property § 27.3 cmt. b, illus. 1 (1987). In the instant case, the survivorship clause provides otherwise.

 The survivorship clause in the Will, although silent as to the time of its operation, must have been inserted to prevent against a class member's interest passing to their estate in the event they died prior to distribution. The presence of the clause in and of itself, although not completely clear, is an indication of such intent by the donor. Restatement (Second) of Property § 27.3 cmt. e (1987). According to the Restatement (Second) of Property;

Because of the undesirability of having the gift pass through the deceased member's estate [8] and because the provision

for substitution of issue is a sufficient indication of the donor's intent that he did not wish such a result, it should be presumed, in the absence of contrary indication, that the donor who provides for substitution of issue intends that the share of the other class members be enlarged if a class member fails to survive to the date of distribution and leaves no issue who so survive.

Restatement (Second) of Property § 27.3 cmt. e (1987).

Therefore, having decided when the remainder vested and when the class will be fixed, the present nature of a niece's or nephew's remainder interest (during John Patterson's lifetime) is vested subject to open and partial divestiture, in the event more nieces and nephews are born. Thus, although Turner's interest vested at Mrs. Patterson's death, the survivorship clause provides that the share of a niece or nephew who dies prior to distribution, without issue, lapses in favor of the other class members. As a consequence, because Turner died without issue, his interest lapsed.[9] Accordingly, we affirm the result of the trial court's judgment regarding the Will, modify the trial court's findings, in accordance with this opinion, and overrule Appellant's first point of error.

### B. Validity of the Trust and its Distributions

 In Point of Error No. Two, Appellant complains that the trial court erred in finding the Patterson/Belcher Trust, and the distributions made pursuant thereto, to be valid. Counsel for the parties agreed at the hearing on the declaratory judgment that the Trust itself was not at issue since its terms are to be in strict accordance with the terms of the Will. Therefore, the issue on review is the validity of the trust and the distributions made pursuant to it (to the other remaindermen) insofar as they conflict with the proper construction of paragraph Fourth of the Susan Patterson

---

8. The "undesirability" is an estate tax imposed on the value of such interest before it is enjoyed in possession. Restatement (Second) of Property § 27.3, Reporter's Tax Note to section 27.3 (1987).

9. It should be noted that the Texas anti-lapse statute does not apply because it only becomes operative in favor of *descendants* who fail to survive the *testator*. Tex.Prob.Code Ann. § 68 (Vernon Supp.1993).

Will. The trial court specifically ordered in the judgment "that the distribution of assets prior to the death of John Patterson to the other living nieces and nephews of Susan Patterson is valid and effective."

Since we have construed the Will to distribute the remainder interest upon the death of John Patterson, it necessarily follows that any distributions made to remaindermen-beneficiaries pursuant to the Trust and according to the terms of the Will would be premature. While the interest is vested (albeit subject to partial divestiture), again, possession and enjoyment are deferred until ultimate distribution. Because the interests are subject to partial divestiture in the event that other nieces and nephews are born, and because a niece or nephew might fail to survive Mr. Patterson with issue, distributions to remaindermen-beneficiaries, which must be made pursuant to the terms of the Will, are invalid prior to his death. Thus, we find that any previous distributions which may have been made to remaindermen-beneficiaries are invalid. Accordingly, Appellant's Point of Error No. Two is sustained as it relates to those remaindermen-beneficiaries.

Having sustained Appellant's second point of error, the judgment of the trial court is affirmed in part and reversed in part and the cause remanded to the trial court for entry of a judgment in accordance with this opinion.