**Betty Merle Boren DEVINEY and Ada Merle Gosa, Appellants,**

v.

**NATIONSBANK as Independent Executor of the Estate of Winolan Taylor, Deceased, and Trustee of the Winolan Taylor Trust, Charles C. Clendening, Jr., Isla R. Clendening Cook, and Arlen K. Clendening, Appellees.**

No. 10–98–044–CV.

Court of Appeals of Texas, Waco.

May 12, 1999.

Rehearing Overruled June 2, 1999.

**446**

Stanley Rentz, Waco, John Mischtian, Temple, for appellant.

Donald J. Baker, Waco, Frank Beard, Beard & Kultgen, Waco, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

DAVIS, Chief Justice.

NationsBank as Independent Executor of the Estate of Winolan Taylor, Deceased, and Trustee of the Winolan Taylor Trust filed a declaratory judgment action asking the court to determine whether the Estate has any title or interest in a certain tract of property referred to as the "Roe Taylor Estate" or the "Roe Taylor Farm" (hereinafter, the "Farm") which Taylor purported to grant through the Trust. Taylor inherited her interest in the Farm from her father Nolan Taylor whose will was probated in 1977. The primary question presented is whether the conditions and limitations in the pertinent devise of the Nolan Taylor will constitute an invalid restraint on alienation.

## FACTUAL BACKGROUND

Nolan Taylor and his seven siblings inherited the Roe Taylor Farm from their parents.[1] At his death, Nolan Taylor owned an undivided one-half interest in the Farm, and his sister Marie Taylor Boren owned the other one-half interest. She conveyed her interest to her daughter, Appellant Betty Merle Boren Deviney, six years after Taylor's death.

The pertinent clause in the Nolan Taylor will devised his interest in the Farm as follows:

> I hereby devise all of my interest in said real estate, known as the "Roe Taylor Estate" to my wife, WINNIE D. TAYLOR, and my two daughters, RUBY KATHERINE TAYLOR and WINOLAN TAYLOR, share and share alike, on the express condition and limitation that said interest remain undivided and be kept in tact [sic] with the other undivided interest of my brothers and sisters, until such time as all of the joint owners should desire to partition, sell or otherwise dispose of the entire interest in all or any part of said property, and provided further that in the event of the death of my wife or either of my said daughters before the same shall have been partitioned or disposed

---

1. See the Appendix to this opinion for a summary of how ownership of the Roe Taylor Farm has passed from this inheritance to the present.

of as aforesaid, the interest of such deceased shall pass to the survivor or survivors, and in the event my wife and both of my said daughters should die before said property has been partitioned or disposed of as aforesaid, then my interest in such part of the said "Roe Taylor Estate" land shall pass to my brothers and sisters, save and except Isla Taylor Clendening, who no longer owns an interest in said Estate Property,[2] and in the event any of my said brothers and sisters, except the said Isla Taylor Clendening, should then be deceased, the share of such Decedent shall pass to his or her Descendants per stirpes. My said wife and daughters shall not have the right to sell or otherwise dispose of their interest in the said "Roe Taylor Estate" property so long as it shall remain in tact [sic] as an undivided interest, except by the joinder of the other co-owners. If and when the said Estate Property shall be partitioned with the consent of the other co-owners as aforesaid, the share and interest set aside to my said wife and daughters shall vest in them in fee simple without any limitations or conditions.

Taylor's wife predeceased him. Taylor's daughter Ruby Katherine survived him but predeceased her sister Winolan. All of his siblings predeceased him except his sister Marie Taylor Boren, who also predeceased Winolan. Not including Isla Taylor Clendening, only Nolan Taylor's brother Desha and sister Marie left descendants. Desha is survived by his daughter Appellant Ada Merle Gosa, and Marie is survived by her daughter Appellant Deviney. Appellees Charles C. Clendening, Jr., Isla R. Clendening Cook, and Arlen K. Clendening are the descendants of Isla Taylor Clendening.

The interest Nolan Taylor sought to give his wife Winnie in the Farm passed through the residuary clause of his will because she predeceased him. *See Wilkins v. Garza*, 693 S.W.2d 553, 555 (Tex. App.—San Antonio 1985, no writ); *Wilson v. Clay*, 593 S.W.2d 725, 728 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (op. on reh'g). Under this clause, Nolan Taylor's daughters received equal shares of the interest their mother would have received.[3]

Because Ruby Katherine Taylor predeceased Winolan Taylor, the latter's estate passed under the residuary clause of her will which devises certain items of personal property to a friend and named family members and devises the remainder of her estate to NationsBank as Trustee of the Winolan Taylor Trust.[4] *Id.* Under the terms of the Trust, NationsBank is to convey Winolan Taylor's interest in the Farm "equally" to Deviney, Charles C. Clendening, Jr., Isla R. Clendening Cook, and Arlen K. Clendening. The Trust grants Gosa a five percent interest in the residual estate of the Trust, which does not include the Farm.

Upon Taylor's death, NationsBank sought a legal opinion regarding ownership of the Farm. After reviewing all the pertinent documents, counsel provided NationsBank a written opinion that because the Farm was never partitioned, the Winolan Taylor Estate did not own any interest in the Farm according to the terms of the Nolan Taylor will. Rather, her interest in

---

**2.** The Farm originally contained approximately 365 acres. Isla Taylor Clendening asked her siblings to set apart her ⅛ interest in the Farm in lieu of an undivided ⅛ interest in the entire tract. Accordingly, her seven siblings executed a warranty deed conveying approximately 65 acres to their sister. She in turn conveyed to them her interest in the remaining 300 acres. Hereinafter, the "Farm" refers to the 300 acres remaining after the conveyance to Isla Taylor Clendening.

**3.** Because the devise to Winnie Taylor lapsed in favor of her daughters, all future references in this opinion to Nolan Taylor's devise of an interest in the Farm to his wife and daughters will be referred to as a devise only to the daughters.

**4.** The Farm is not specifically named or identified in Winolan Taylor's will but is in her trust.

the Farm passed to Nolan Taylor's siblings, save Isla Taylor Clendening.

However, counsel for Isla R. Clendening Cook provided NationsBank with his own written opinion that the conditions and limitations in the Nolan Taylor will constitute an invalid restraint on alienation. Thus, he concludes such provisions are void and Winolan Taylor owned a fee simple interest in the Farm which should be distributed according to the terms of the Trust.

Faced with these conflicting opinions, NationsBank filed this declaratory judgment action. After reviewing all the pertinent documents and considering argument of counsel, the trial court determined that the conditions and limitations in the Nolan Taylor will constitute an invalid restraint on alienation. Accordingly, the court declared the conditions and limitations void and decreed that the Estate owns an undivided one-half interest in the Farm which should be distributed according to the Winolan Taylor Trust.

## APPLICABLE LAW

### CONSTRUCTION OF WILLS

■ The testator's intent governs our construction of any will. *McGill v. Johnson,* 799 S.W.2d 673, 674 (Tex.1990). All the provisions of a will must be considered when ascertaining the intent of the testator. *Frame v. Whitaker,* 120 Tex. 53, 58, 36 S.W.2d 149, 151 (1931); *Lowrance v. Whitfield,* 752 S.W.2d 129, 132 (Tex.App.— Houston [1st Dist.] 1988, writ denied).

### ESTATES IN REAL PROPERTY

■ A devise of real property conveys a fee simple estate unless "the estate is limited by express words." TEX. PROP. CODE ANN. § 5.001(a) (Vernon 1984). Estates may be limited by conditions precedent or subsequent. "[I]f a condition precedes or is incorporated into the [devise], [the vesting of the estate is contingent upon] a condition precedent; but if the condition is added after a vested gift is made, the [estate] is vested subject to divestment." *McGill,* 799 S.W.2d at 675. Texas law favors a construction allowing vesting at the earliest possible time. *Id.* We will not construe an interest as contingent when it reasonably can be construed as vested. *Id.*

■ Historically, a "condition subsequent" has denoted an event which, if and when it happens, will give the grantor the right to terminate the grantee's estate by reentry. *Lawyers Trust Co. v. City of Houston,* 359 S.W.2d 887, 890 (Tex.1962); *Field v. Shaw,* 535 S.W.2d 3, 5 (Tex.Civ. App.—Amarillo 1976, no writ); *but cf. McGill,* 799 S.W.2d at 675–76 (identifying remainder as subject to divestment on "condition subsequent" even though testator had no right of reentry). The occurrence of the subsequent event does not automatically cause the property to revert to the grantor. *Lawyers Trust Co.,* 359 S.W.2d at 890. Rather, the grantor must exercise his right of reentry in order to enforce his reversionary interest. *Id.*

■ Unlike a condition subsequent, an executory limitation denotes an event which, if and when it occurs, will automatically divest the grantee of the property. *See Singer v. Singer,* 150 Tex. 115, 124, 237 S.W.2d 600, 605 (1951); *Harrell v. Hickman,* 147 Tex. 396, 400, 215 S.W.2d 876, 878 (1948); *Smith v. Bynum,* 558 S.W.2d 99, 101–02 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). The grantee's interest in this situation is referred to as a defeasible or determinable fee interest subject to an executory limitation. *See Bullington v. Estate of Belcher,* 665 S.W.2d 517, 518 (Tex.App.—Austin 1983, writ ref'd n.r.e.) *Smith,* 558 S.W.2d at 101–02; *First Nat'l Bank v. DeFoe,* 384 S.W.2d 926, 928 (Tex.Civ.App.—Waco 1964, writ ref'd).

■ The person to whom the property automatically passes on the occurrence of the executory limitation possesses an executory interest. *See Peveto v. Starkey,* 645 S.W.2d 770, 772 (Tex.1982). Ex-

ecutory interests are generally classified as either "springing" or "shifting." RESTATEMENT OF PROPERTY § 25 cmt. e (1936); 3 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 20.05[2] (Patrick J. Rohan, ed., Dec. 1996); *see also Peveto,* 645 S.W.2d at 772 (construing "springing executory interest").[5] A springing executory interest arises when the grantor retains fee simple title in himself until the subsequent divesting event takes place. *See, e.g.,* RESTATEMENT OF PROPERTY § 46, cmt. *1,* illus. 15–18; *see also Peveto,* 645 S.W.2d at 772. A shifting executory interest occurs when ownership shifts from one transferee to another upon the occurrence of the subsequent event. *See* RESTATEMENT OF PROPERTY § 46, cmt. k.

## RESTRAINTS ON ALIENATION

Texas courts have historically looked to the provisions of the Restatement and the Restatement (Second) for guidance in determining whether a particular conveyance or devise violates the common law rule against restraints on alienation. *See, e.g., Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 814 (Tex.1982); *Mattern v. Herzog,* 367 S.W.2d 312, 319 (Tex.1963); *Procter v. Foxmeyer Drug Co.,* 884 S.W.2d 853, 858–59 (Tex.App.—Dallas 1994, no writ); *Randolph v. Terrell,* 768 S.W.2d 736, 738–39 (Tex.App.—Tyler 1987, writ denied). Under the Restatement, a "disabling restraint" on alienation "is an attempt by an otherwise effective conveyance or contract to cause a

later conveyance" "to be void." RESTATEMENT OF PROPERTY § 404(1)(a), (2) (1944); *accord* RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 3.1 (1983). Following the Restatement, Texas courts have generally held "disabling restraints" on alienation invalid. *See Mattern,* 367 S.W.2d at 319; RESTATEMENT OF PROPERTY § 405.[6] However, the Restatement expressly affirms the validity of disabling restraints which limit the authority of a co-tenant to compel partition if "created to last for a reasonable time only." RESTATEMENT OF PROPERTY § 412; *accord* RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 4.5.

## CLASS GIFTS

A devise constitutes a class gift when it grants property to a group of persons "bearing a certain relationship to the testator or to each other." *Wilkes v. Wilkes,* 488 S.W.2d 398, 403 (Tex.1972); *accord Turner v. Adams,* 855 S.W.2d 735, 737 n. 2 (Tex.App.—El Paso 1993, no writ). The persons included in the group satisfy this requirement "when they can be designated by the same general name as … 'brothers' or 'sisters.'" *Wilkes,* 488 S.W.2d at 403. Such a gift must be to a class "uncertain in number at the time of the gift." *Wilkes,* 488 S.W.2d at 403; *Turner,* 855 S.W.2d at 737 n. 2. This requirement of uncertainty can be satisfied by the possibility that the number in the class may increase or decrease in the future. *Turner,* 855 S.W.2d at 737 n. 2; *Sanderson*

---

5. Although our Supreme Court has not expressly adopted the provisions of the Restatement of the Law of Property or the Restatement (Second) of Property, the Court frequently looks to these provisions for guidance in construing particular interests in property. *See, e.g., Regency Advantage Ltd. Partnership v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 277–78 (Tex.1996); *Bockelmann v. Marynick,* 788 S.W.2d 569, 571 (Tex. 1990); *Leeco Gas & Oil Co. v. Nueces County,* 736 S.W.2d 629, 630–31 (Tex.1987).

6. The Restatement (Second) has adopted what one commentator has termed a "more progressive" approach in determining the va-

lidity of disabling restraints. Michael D. Kirby, Note, *Restraints on Alienation: Placing a 13th Century Doctrine in 21st Century Perspective,* 40 BAYLOR L.REV. 413, 417 (1988). Under the Restatement (Second) approach, a disabling restraint is invalid if it "make[s] it impossible" for the grantee to convey his interest "for any period of time." RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 4.1(1) (1983). Any other disabling restraint is valid if under the circumstances "the legal policy favoring freedom of alienation does not reasonably apply." *Id.* § 4.1(2). To date, Texas has not followed the approach of the Restatement (Second). Kirby, *supra,* at 417.

**450**

*v. First Nat'l Bank,* 446 S.W.2d 720, 724 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.).

Texas law presumes that a class gift vests at the death of·the testator if the will fixes no other time for vesting. *Turner,* 855 S.W.2d at 739; *Houston v. Schuhmann,* 92 S.W.2d 1086, 1089 (Tex. Civ.App.—Amarillo 1936, writ ref'd). Texas law similarly presumes that class membership is ascertained at the death of the testator if the will establishes no other time for ascertainment. *Id.* When the will provides that distribution to the class will not occur until the expiration of a life estate, the class membership will not be ascertained until the time fixed for distribution. *Id.*

When a member of the class predeceases the testator, his share lapses in favor of the surviving class members. *Turner,* 855 S.W.2d at 740; *Gregg v. Jones,* 699 S.W.2d 378, 379 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, class members with vested interests cannot "drop out of the class" by virtue of their death after vesting but before distribution. *Turner,* 855 S.W.2d at 739.

### APPLICATION

In five points of error respectively, Appellant Deviney asserts the court erred by:

- holding that the Nolan Taylor will devised a fee simple interest in his undivided one-half interest in the Farm to Winolan Taylor, her mother, and her sister;
- holding that the conditions imposed on this devise constitute an invalid restraint on the alienation of the one-half interest in the Farm;
- holding that the undivided one-half interest in the Farm is a part of the Winolan Taylor Estate;
- rendering judgment that Winolan Taylor owned an undivided one-half interest in the Farm at her death; and
- failing to find that the conditions and limitations on the restraint of the undivided one-half interest in the Farm were conditions precedent to title vesting in Winolan Taylor, her mother, and her sister.

By a single point of error, Appellant Gosa avers the court erred in ruling that the conditions imposed on the devise of the undivided one-half interest in the Farm constitute an invalid restraint on alienation and are void.

The Nolan Taylor will devises his interest in the Farm to his daughters "on the express condition and limitation that" said interest remain undivided and intact with the interests of his siblings until such time as all joint owners desire to partition or dispose of the entire interest in all or part of the Farm, and "provided further":

    (1) if either daughter dies before partition of the Farm, the interest of the decedent passes to the survivor of them; and

    (2) if both daughters die before partition, their interest passes to his siblings (save Isla Taylor Clendening) and/or their descendants.

The next sentence prohibits the daughters of Nolan Taylor from disposing of their interest in the Farm without the consent of the co-owners if it has not been partitioned. The final sentence provides that fee simple title shall vest in the daughters "[i]f and when the [Farm] shall be partitioned with the consent of the other co-owners."

Nolan Taylor clearly expressed an intent in his will that the Farm not be partitioned by his descendants and his siblings [7] unless all co-owners agreed to the partition. Bearing his intentions in mind, we examine each sentence of the pertinent devise.

The first sentence devises Nolan Taylor's one-half interest in the Farm to his daughters on the condition that they not seek to partition the property without the consent of the other co-tenants. The first sentence of the devise also provides that if the Farm has not been partitioned at the death of Nolan Taylor's daughters,

---

7. Unless otherwise indicated, any further reference in this opinion to Nolan Taylor's "sib-lings" is a reference to his siblings and/or their descendants.

his interest in the Farm shall pass to his siblings. This provision granted a life estate to Taylor's daughters as joint tenants with right of survivorship. *See Guilliams v. Koonsman,* 154 Tex. 401, 406, 279 S.W.2d 579, 582 (1955); *Eversole v. Williams,* 943 S.W.2d 141, 143 (Tex.App.—Houston [1st Dist.] 1997, no writ) (both holding no particular words necessary to create life estate); *see also Roberdeau v. Jackson,* 565 S.W.2d 98, 100 (Tex.Civ. App.—Austin 1978, no writ) (creation of joint tenancy for life with right of survivorship requires "an express grant of the right of survivorship").

■ Because the restraint on compelled partition is limited to the lives of Taylor's daughters, we believe it "last[s] for a reasonable time only." RESTATEMENT OF PROPERTY § 412; *accord* RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS § 4.5. Accordingly, we conclude that it constitutes a permissible restraint on the power of Taylor's daughters to compel a partition of the Farm.[8]

■ This first sentence of the devise also creates a remainder interest in Taylor's siblings in the event the Farm is not partitioned. In *McGill,* the Supreme Court characterized a similar remainder interest as vested, subject to divestment on condition subsequent. *See McGill,* 799 S.W.2d at 675–76. The remainder interest of the siblings similarly vested at Nolan Taylor's death while their right to possession or enjoyment of this remainder interest began at Winolan Taylor's death. *Id.,* 799 S.W.2d at 675 & n. 2.

The remainder interest of the siblings is more accurately characterized as a defeasible or determinable fee interest subject to an executory limitation. *See Bullington,* 665 S.W.2d at 518; *Smith,* 558 S.W.2d at

101–02; *DeFoe,* 384 S.W.2d at 928. This is so because Nolan Taylor's will provides that in the event of partition, ownership of the Farm automatically vests in his daughters. *See Singer,* 150 Tex. at 124, 237 S.W.2d at 605; *Harrell,* 147 Tex. at 400, 215 S.W.2d at 878; *Smith,* 558 S.W.2d at 101–02.

■ Because ownership would pass from the siblings to Taylor's daughters in the event of partition, the executory interest of the daughters is properly characterized as a shifting executory interest. *See* RESTATEMENT OF PROPERTY § 46, cmt. k. This characterization does not change even though a partition during the lives of Taylor's daughters would divest the siblings of their remainder interest before their right to possession ever came to pass. *See* POW-ELL, § 20.04[5][a] ("remainder may be so created as to be capable of expiration before the end of the preceding interest").[9]

■ The second sentence of the devise prohibits Nolan Taylor's daughters from conveying their interests in the Farm without the consent of the co-owners. This constitutes an invalid disabling restraint on the alienation of their interests. *See Frame,* 120 Tex. at 59, 36 S.W.2d at 151; *Kitchens v. Kitchens,* 372 S.W.2d 249, 252 (Tex.Civ.App.—Waco 1963, writ dism'd). Accordingly, it is void. *Frame,* 120 Tex. at 60, 36 S.W.2d at 152.

The third sentence of the devise provides that fee simple title will vest in Taylor's daughters "if and when" the Farm is partitioned. This provision operates merely to confirm the shifting executory interest Taylor devised to his daughters. *See Frame,* 120 Tex. at 58, 36 S.W.2d at 151; *Lowrance,* 752 S.W.2d at 132 (both requiring that we consider entirety of will when ascertaining testator's intent).

---

8. The question of whether a grantor or testator may properly restrain his grantee(s) or devisee(s) from compelling a partition of the property transferred is apparently one of first impression in Texas.

9. Because we have characterized the interest of the descendants of Nolan Taylor's siblings as a "defeasible" or "determinable" fee interest, it follows that the future interest of Taylor's daughters in the event of partition

cannot be characterized as a contingent remainder subject to vesting on the occurrence of a condition precedent as suggested by Appellant Deviney. *See* RESTATEMENT OF PROPERTY § 156(2) (1936) ("The word 'remainder' does not include a future interest which becomes a present interest, if ever, upon the expiration of an estate in fee simple determinable").

The parties agree that the Farm has not of yet been partitioned. Accordingly, the right of Nolan Taylor's siblings to possession or enjoyment of their remainder interest in the Farm began at Winolan Taylor's death. The executory limitation which would divest the siblings of their remainder interest never came to pass. We must now determine who holds this remainder interest.

Nolan Taylor's devise of the remainder interest to his siblings (excluding Isla Taylor Clendening) and/or their descendants is properly characterized as a class gift. *See Wilkes*, 488 S.W.2d at 403; *Turner*, 855 S.W.2d at 737 n. 2. Because four of his siblings predeceased him without leaving descendants, their shares lapsed in favor of the surviving class members. *See Turner*, 855 S.W.2d at 740; *Gregg*, 699 S.W.2d at 379. The class members surviving at Taylor's death were his sister Marie Taylor Boren and his brother Desha's daughter, Ada Merle Gosa. Thus, at Taylor's death the remainder interest vested equally in Boren and Gosa. *See Turner*, 855 S.W.2d at 739; *Houston*, 92 S.W.2d at 1089.

Although Boren received a vested remainder at her brother's death, the right to possession and enjoyment of the remainder interest did not come to pass until Winolan Taylor's death. Because it was a vested interest however, the interest did not lapse by virtue of her predeceasing Winolan Taylor. *See Turner*, 855 S.W.2d at 739. Rather, at Boren's death her share of the remainder passed by intestate succession to her sole descendant, Betty Merle Boren Deviney. Thus, at Boren's death this remainder interest was held equally by Deviney and Gosa.

At Winolan Taylor's death, Deviney and Gosa took an unqualified fee simple title to Nolan Taylor's one-half interest in the Farm. Thus, Deviney presently owns an undivided three-fourths interest in the Farm, and Gosa owns the remaining one-fourth interest in the Farm. For these reasons, we sustain Deviney's first four points and Gosa's sole point. Because we have determined that Nolan Taylor's daughters possessed an executory interest rather than a contingent remainder, we overrule Deviney's fifth point.

## CONCLUSION

The court erred in finding that Nolan Taylor devised to his daughters a fee simple interest in the Farm and that all of the conditions and limitations placed on the devise are void because they constitute an invalid restraint on alienation. Accordingly, we reverse the judgment and render judgment that the Estate of Winolan Taylor, Deceased has no title or interest in the Roe Taylor Farm.

Justice CUMMINGS not participating.

## APPENDIX

### THE TAYLOR FAMILY & THE ROE TAYLOR FARM
### J.M. (ROE) TAYLOR      MARTHA ELIZABETH TAYLOR

| ISLA TAYLOR CLENDENING d. 19?? | MERTIE TAYLOR d. 1962 | DESHA TAYLOR d. 1969 | LEROY TAYLOR d. 1973 | ANNIE TAYLOR d. 1974 | VERA TAYLOR d. 1974 | NOLAN TAYLOR d. 1977 | MARIE TAYLOR d. 1990 |

| CLENDENING APPELLEES (all living) | ADA MERLE GOSA (alive) | RUBY KATHERINE TAYLOR d. 1992 | WINOLAN TAYLOR d. 1996 | BETTY MERLE BOREN DEVINEY (alive) |

Roe Taylor died intestate in 1931. Under the law then in effect (V.R.C.S. art. 2578), Martha Elizabeth Taylor received one-half (½) of the Farm and the Taylor children received the other one-half (½) by intestate succession (assuming the Farm was community property). The Taylor children came into full ownership of the 365–acre tract when their mother died intestate in 1939. Thus, each Taylor child owned an undivided one-eighth (⅛) interest in the Farm. That same year, seven of them conveyed their respective one-eighth (⅛) interests in a 65–acre portion of the tract containing the house to Isla Taylor Clendening who in exchange conveyed to them her one-eighth (⅛) interest in the remaining 300 acres (the "Farm"). Thus, in 1939 the seven other Taylor children each owned a one-seventh (⅐) interest in the Farm.

Mertie Taylor died in 1962. In her will, she devised her one-seventh (⅐) interest in the Farm in equal shares to Annie, Vera and Leroy without condition or limitation. Thus, in 1962 Annie, Vera and Leroy each owned a 4/21 interest in the Farm (totaling 12/21) and Desha, Nolan and Marie each owned a 3/21 interest (totaling 9/21).

Desha Taylor died in 1969 without a will. Thus, his 3/21 interest in the Farm passed at his death to his wife Emma and daughter (Appellant Ada Merle Gosa). In 1971, Emma and Ada sold this 3/21 interest in the Farm to the remaining five Taylor children without condition or limitation. Thus, in 1971, Annie, Vera and Leroy each owned a 4.6/21 interest in the Farm (totaling 13.8/21) and Nolan and Marie each owned a 3.6/21 interest (totaling 7.2/21).

Leroy Taylor died in 1973 with a holographic will. He devised his 4.6/21 interest in the farm to his four surviving siblings without condition or limitation. Thus, in 1973 Annie and Vera each owned a 5.75/21 interest (totaling 11.5/21) and Nolan and Marie each owned a 4.75/21 interest (totaling 9.5/21).

Annie Taylor died in May 1974. Under her will, she devised her 5.75/21 interest equally among Nolan, Leroy, Vera and Marie "in fee simple" without condition or limitation. She named her siblings' children or descendants as alternate beneficiaries if any of the four siblings predeceased her. Leroy predeceased Annie, but he had no children or descendants. Her will provided that in this event his interest was divided equally among the surviving siblings. Thus, when Annie Taylor died, Vera owned a 23/63 interest while Nolan and Marie each owned a 20/63 interest (totaling 40/63).

Vera Taylor died in June 1974. Under her will, she devised her 23/63 interest equally among Annie, Marie, Nolan and Leroy "in fee simple" without condition or limitation. Her will also provided that in the event any of the named siblings predeceased her without lineal descendants, then that sibling's interest was divided equally among the surviving siblings. Thus, when Vera Taylor died, Nolan and Marie each owned one-half (½) of the Farm.

In 1983, Marie Taylor Boren conveyed her undivided one-half (½) interest in the Farm to her daughter Appellant Betty Merle Boren Deviney without condition or limitation. Boren died in 1990.