TRUSTEES OF the CASA VIEW ASSEM-
BLY OF GOD CHURCH, Appellants,

v.

Reverend Fred A. WILLIAMS, Appellee.

No. 11485.

Court of Civil Appeals of Texas.

Austin.

April 19, 1967.

Vactor H. Stanford, Dallas, for appellants.

Jay S. Fichtner, Paul F. Vernon, Dallas, for appellee.

O'QUINN, Justice.

This case, an action to recover a one-acre tract of land conveyed in 1960 by a Dallas church to its pastor, was decided in district court on motions for summary judgment.

Trustees of the Casa View Assembly of God Church brought this suit in 1964 to

recover land from Rev. Fred A. Williams, appellee, who had resigned as pastor of the church in 1962 and moved to the State of Florida.

The church trustees, appellants in this cause, alleged that the acre of land was conveyed to appellee "in trust * * * upon which to build a parsonage for the church," with the right in the church "to purchase the equity in the land * * * when the church was financially able to do so." A resolution adopted by the congregation of Casa View Assembly of God Church on June 1, 1960, directed and empowered the trustees "to execute a General Warranty Deed to Fred A. Williams [to the acre of land, described in the resolution] "on which to build a parsonage." The resolution also recited that "The Church is to have an option to purchase the equity from Rev. Williams when the Church is financially able to do so."

The land was conveyed to appellee in August, 1960. Two years later, in August, 1962, appellee resigned as pastor, without having built the parsonage, and moved to Florida with record title to the land in him.

Appellants alleged demand upon appellee for reconveyance of the land to the church and tender of his equity, being taxes paid by appellee in years 1960 through 1963. Appellants tendered into the registry of the court taxes for 1960 through 1965 as the entire equity of appellee.

Appellee answered contending that in the summer of 1960 the church was in financial trouble and on July 20, 1960, at a regular business meeting the church decided to deed the acre of land to appellee, with the understanding "that the deed was to express some measure of appreciation of the church for the work that affiant had done in its behalf." Appellee does not assert and the record does not show that the congregation took any formal action at this meeting to revoke or amend the resolution adopted June 1.

In his affidavit supporting his answer to appellants' motion for summary judgment, appellee stated that two years after the deed, in connection with his departure as pastor in August, 1962, "the Trustees and Deacons of the church" held a regular meeting at which there was a discussion relating to the property. Appellee swore that all members of the church present at the meeting "recognized that affiant had still not been paid for his many sacrifices, physical, mental and financial, on behalf of the church." No claim is made that the trustees and deacons, or the church congregation, took any concerted action either to affirm or rescind the transfer of the land to appellee.

Appellee further swore that, "At that time the trustees acknowledged that if and when the church were ever to re-purchase the property from affiant, it would pay him for his investments, not only in the said acre of land itself, but his investments of labor, and monies in the entire church property." Appellee swore that he had spent $3,500 in behalf of the church, and "had put in physical labor, other than in connection with his duties as pastor, in building and refurbishing the church, the reasonable value of such labor being in the sum of $2,000."

The deed to appellee was executed by the church trustees August 4, 1960, and acknowledged August 5, 1960. The resolution of the congregation adopted June 1, 1960, authorizing and directing the making of the deed was certified by the church secretary and acknowledged August 5, 1960, before the same notary public taking acknowledgments of the trustees on the deed. The deed and the resolution were filed for record in Dallas County August 11, 1960. The resolution was recorded on that date, and the deed was recorded August 16, 1960.

The conveyance executed by the trustees was a general warranty deed reciting a consideration of ten dollars and other good and valuable consideration in hand paid by appellee, receipt of which was "fully acknowledged and confessed." The deed contained no reference to building a parsonage or the right of the church to buy the

pastor's equity. The deed was executed by four trustees, one of whom appears to have been appellee, who was also the grantee.

Ancillary to the proceedings in district court, appellants caused the land in dispute to be attached prior to trial and judgment in the cause. In the affidavit for attachment it was represented that appellee was indebted to appellants in the value of the land which was stated to be $10,000, and that the debt was due for property obtained under false pretenses.

The cause was heard by the trial court June 3, 1966, on motion for summary judgment by both parties, and judgment for appellee was rendered June 14, 1966.

On this appeal, appellants assign two points of error. The first assignment is that there is a genuine dispute as to material facts which appellants are entitled to have submitted to a jury, and summary judgment is not applicable. The second point is that the trial court erred in basing judgment on the statute of limitations, since the property was held in constructive trust, and the statute is not operative under the facts.

Appellants pleaded that appellee held the property in trust for the church so that a parsonage could be built on the land, with title in the pastor, because the church was too poor to build on its own credit. It is undisputed that after two years following execution of the deed, the parsonage not having been built, appellee resigned as pastor and moved to Florida. The trustees for the church instituted suit to recover the land about two years after the pastor left, but more than four years after execution of the deed.

Appellee pleaded the four-year statute of limitations, contending that the statute started to run with execution of the deed August 4, 1960, and was barred when suit was filed November 12, 1964.

Appellants contend on appeal that this suit was brought to establish an express trust engrafted upon the deed. Appellants rely upon authorities holding that Article 5529, Vernon's Anno.Tex.Stats., will not limit to four years the period within which an action may be brought to engraft a parol trust on a deed absolute on its face. Carl v. Settegast, Comm. of App., 1922, 237 S.W. 238; Redwine v. Coleman, Tex. Civ.App., Texarkana, 71 S.W.2d 921 (writ ref.); Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184 (1955).

The trustees for the church alleged a demand upon appellee to reconvey the property. They prayed for mandatory injunction to compel reconveyance or in the alternative for cancellation of the deed. Whether a suit is one for recovery of real estate under the exception of Article 5529 depends upon the nature of the title asserted by the plaintiff. Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62 (1959). Appellants did not bring this action on the theory that the deed was void and that the church owned the property with right of possession. Appellants apparently recognize the deed as valid, but contend that if they tender the amount of taxes paid by appellee, the church is entitled to reconveyance by appellee or cancellation of the deed by the court.

Under the facts and pleadings of this action, appellants must first invoke the equitable powers of the court to set aside the deed, in order to establish the title sued for. This action therefore is not one to recover real estate. 37 Tex.Jur.2d, Limitation of Actions, sec. 33, pp. 134–5; Slaughter v. Qualls, 139 Tex. 340, 161 S.W.2d 671 (1942). The trustees for the church, having executed a deed, passed title to the land which can be recovered only by setting aside the deed, which is a personal action, not a suit to recover real estate, and is subject to Article 5529 which bars the action within four years. Lott v. Van Zandt, Tex.Civ.App., Amarillo, 107 S.W.2d 761 (no writ).

Appellants argue that appellee held the land under a constructive trust, and that the statute of limitations did not start to run until appellants learned that appellee would not reconvey the property to the church. Appellants did not plead a promise by appellee to build the parsonage or to reconvey the land, but pleaded only that appellee took the land in trust and then refused to reconvey when demand was made on him. There is no pleading charging the pastor defrauded the church, although the affidavit in support of attachment recited that the property had been obtained under false pretenses. Fraud is an essential element of a constructive trust, and mere failure to discharge a promise of something to be done in the future is not fraud. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158 (1943). If it was the pastor's intention when he accepted the deed not to perform his promise, if there was one, expressed or implied, to build a parsonage or deed the lot back to the church, the deed could be cancelled for fraud. But the fraud necessary to effect cancellation must be shown by more than breach alone. Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118 (1943).

The resolution adopted by the congregation June 1, 1960, authorizing the trustees "to execute a General Warranty Deed to Fred A. Williams on [the one-acre tract] on which to build a parsonage," was in the nature of an expression of a hope that the pastor would build the parsonage. The obligation, if it existed, was not set out in either the resolution or the deed, and there is no evidence the pastor agreed to build a parsonage.

In the law of wills and trusts such provisions are called precatory, derived from the Latin verb *precari*, to pray, and the suffix "ory," that is, "pertaining to," thus making a word that means "pertaining to prayer." In the resolution the congregation could be said to have expressed the prayer, hope, expectation, desire, or even a request, that the pastor "build a parson-age" on the land. But these are no more than words of recommendation and are not imperative unless they appear to create an obligation.

It is well-settled law in this state that separate instruments executed contemporaneously, as part of the same transaction and relating to the same subject, may be construed together as a single instrument. Rudes v. Field, 146 Tex. 133, 204 S.W.2d 5 (1947). The rule applies to a deed conveying real estate, even though the deed does not expressly refer to an agreement contemporaneously made by the parties. Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209 (1947).

In each of these cases the Supreme Court construed deeds with additional writings executed contemporaneously with the conveyances. In Rudes v. Field the contemporaneous writing was a contract and in Puckett v. Hoover the other writing was a draft. We believe the underlying principles of the rule require construction in this cause of the deed and the resolution as one instrument. See 19 Tex.Jur. 2d, Deeds, Sec. 122, and cases cited.

The option "to purchase the equity from Rev. Williams when the Church is financially able to do so," as stated in the resolution, was too indefinite for enforcement. No value for the land was stated and the equity of the appellee was not defined. The time within which the option might be exercised was measured only by the uncertain period when the church would be able financially to purchase. This period, by divine intervention could be short, or it could extend beyond the lives of all mortals party to the transaction, or it might never end.

Appellee contends that if there was an agreement to an option in connection with the deed, the option is void because it falls within the rule against perpetuities. The Constitution of Texas provides that perpetuities shall never be

allowed. Vernon's Ann.St. Constitution of Texas, Article I, Section 26. Without a statute on the subject defining perpetuities as denounced by the Constitution, the common law is the law of this State. Hunt v. Carroll, Tex.Civ.App., Beaumont, 157 S.W.2d 429, error dismissed 140 Tex. 424, 168 S.W.2d 238. The common law rule is that no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest, to which is added the period of gestation if gestation exists. 70 C.J.S. Perpetuities § 3, pp. 577–578; Clarke v. Clarke, Tex.Comm.App., 121 Tex. 165, 46 S.W.2d 658, 121 Tex. 165; Hunt v. Carroll, supra; 45 Tex.Jur.2d, Perpetuities and Restraints on Alienation, sec. 2, p. 97.

▌ The underlying policy of the rule against perpetuities requires that options to repurchase, the terms of which fall within the rule, be held invalid as violations of the rule. The American Law Institute, in the Restatement of The Law of Property, concludes that the reservation of an option to repurchase the whole or any part of the interest conveyed made in favor of the grantor is invalid when the option may continue for a period longer than the maximum period permitted in the rule against perpetuities. Restatement, Property, Vol. 4, sec. 394.

▌ The option as expressed in the resolution was to purchase the equity "from Rev. Williams" when the church should be financially able to buy the equity. As expressed, the option appears to be limited to purchase from the pastor and would not extend to his heirs and assigns. Thus the interest must vest, if at all, during a life in being and not beyond. If an instrument is capable of two constructions, the courts will favor the construction that saves its validity, as against an interpretation rendering it void. Rust v. Rust, Tex.Civ. App., Austin, 211 S.W.2d 262, affirmed 147 Tex. 181, 214 S.W.2d 462. If by its terms the option must be exercised, or will expire, within the period limited by the rule, in this case during the life of the pastor, the option does not violate the rule. See 162 A.L.R. 581, 588.

▌ The option sought to be reserved by the church to purchase from the pastor his equity, although not in violation of the rule against perpetuities, did create an unreasonable restraint on alienation. The rule prevailing in most jurisdictions is that ownership of land by legal title in fee carries with it the right to sell, mortgage, or otherwise alienate the property at any time. Restraint on alienation is repugnant to the grant, and the restraint is invalid as against public policy. See 42 A.L.R.2d 1243, 1247, 1249. The rule is applied to options reserved in deeds or in connection with such conveyances. See 162 A.L.R. 581, 594.

▌ When it is clear from the deed that conveyance of fee simple title was intended, the provision repugnant to the grant will be disregarded. Soper v. Medford, Tex.Civ.App., Eastland, 258 S.W.2d 118 (no writ). In the grant of fee simple title, the church, by reservation of the option to buy the pastor's equity, sought to take from the grant some of the essentials the law invariably attaches to the property rights of a title in fee. Diamond v. Rotan, 58 Tex.Civ.App. 263, 124 S.W. 196 (writ ref.).

▌ The record in this case does not disclose that there was a dispute as to any material fact requiring submission to a jury. Appellants did not plead failure or lack of consideration in that the parsonage was never built. There is no pleading that appellee promised to build a parsonage in consideration for the conveyance. The parsonage evidently was in the hopes and prayers of the congregation, but it was not made an obligation of the deed. What moral obligation, if any, the pastor felt and assumed when he accepted the deed, knowing that the congregation hoped and expected that he would build a parsonage or deed the lot back to the church, must

be determined by the judgment of a tribunal other than the courts.

We hold that the district court correctly found for the appellee on motion for summary judgment.

The cause is affirmed.