# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00781-CV

**August Meduna, Jr., Appellant**

**v.**

**Ruth Holder, Guardian of the Person and Estate of Minnie Meduna, N.C.M., Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. G-33, HONORABLE M. BENTON ESKEW, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal concerns the validity of a warranty deed of gift, executed by August Meduna, Sr. (now deceased) and his wife Minnie Meduna (now an incapacitated person), which conveyed life estates in certain property to appellant August Meduna, Jr. and his two siblings, Gary Meduna and appellee Ruth Holder. Following a hearing, at which no evidence was considered beyond the deed, the trial court determined that the deed violated the rule against perpetuities and imposed an unreasonable restraint on alienation. The trial court concluded that the deed could not be modified in a manner consistent with the public policy of this state and declared the deed void. August Jr.[1] appeals the court's ruling, arguing that the deed does not violate the rule against

---

[1] Because so many of the parties share the same last name, we will refer to all family members by their first name, delineating August Sr. (the father) from August Jr.(the son).

perpetuities or unreasonably restrain alienation, but even if it does, it should have been reformed to reflect the intent of the grantors. We hold that the restraint on alienation is unreasonable and must be stricken from the deed. Although the deed violates the rule against perpetuities, it is capable of being reformed to avoid that violation. Because the trial court is in a better position to reform the deed to confirm the intention of the grantors, and because the issues of delivery, Minnie's capacity at the time of execution, and lack of an adequate property description must be resolved to determine the deed's validity, we reverse the court's judgment and remand for a full hearing on the validity of the deed. If the deed is found to be otherwise valid, the trial court must then strike the restraint on alienation and reform the deed to avoid the violation of the rule against perpetuities.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

**The Deed**

The grantors of the deed in question were August Meduna, Sr. and Minnie Meduna. The grantees include their three children—Ruth Holder, August Meduna, Jr., and Gary Meduna—and various descendants of these children. The deed was signed on June 17, 1997, but there is no evidence in the record that the deed was ever delivered. The deed was discovered in 1998, after the death of August Sr. On November 6, 2001, Minnie was found to be an incapacitated person, and her daughter Ruth was appointed guardian of her person and her estate.

---

[2] The facts are taken from the parties' pleadings and their briefs. Although a reporter's record of the hearing that resulted in the complained-of order was filed with this Court, no evidence or testimony was offered during the hearing, other than a copy of the deed at issue.

The original deed purported to divide a single piece of property into three tracts, and retained a life estate in all three tracts for August and Minnie, or the survivor of them. Upon the death of the last of the grantors, the deed conveyed a life estate in Tract I to Ruth, a life estate in Tract II to August Jr., and a life estate in Tract III to Gary. At the end of Ruth's life, Tract I passed in undivided interests to August Jr. and Gary for life, and then to Gary's children for life. At the end of August Jr.'s life, Tract II passed to Gary for life, then to Gary's children for life. Similarly, at Gary's death, Tract III passed to his children for life. At the end of the lives of Gary's children, all three tracts passed "in successive life estates until the perpetuities period expires," at which time all three tracts were to be distributed to Gary's living descendants. This disposition is challenged as offending the rule against perpetuities.

Although the deed contains a property description of the entire property, an attachment that presumably describes each of the three tracts is referenced as an exhibit, but was not attached to the deed or introduced into evidence.

Additionally, the deed includes a restriction on alienation that is also challenged. Any grantee desiring to alienate an interest created by this deed must first offer that interest "to all of the then existing heirs" for the total price of $5,000. Only if that offer is not accepted by all or part of the surviving heirs within 30 days may the owner alienate the property in some other manner.

**The Controversy**

On December 4, 2001, Ruth Holder, as guardian of Minnie and her estate, filed an original petition and appearance as part of the guardianship proceeding, seeking a determination as to the validity of the deed. She challenged its validity on a number of bases.

3

Subsequently, in an effort to avoid litigation over the validity of the deed, Ruth, acting as Minnie's guardian, executed an alternate deed reserving a life estate in the property for Minnie and conveying the remainder in fee simple to Minnie's three children. Ruth then filed a motion seeking court ratification and authority to file the alternate deed. On August 2, the court held a hearing on this motion, in conjunction with a hearing on the validity of the original deed. At that hearing, no party presented evidence. Rather, all parties[3] presented their arguments regarding the validity of the original deed. Following these arguments, the court declared that the original deed violated the rule against perpetuities and included an unreasonable restraint on alienation. The court further concluded that because the deed could not be reformed consistent with the public policy of this state, it was void. The trial court ruled that Ruth's motion to ratify the alternate deed was moot and therefore denied because the original deed was void and invalid. The trial court apparently did not receive evidence or consider the other issues raised in Ruth's initial petition concerning the validity of the deed: whether there was evidence of delivery of the deed, whether Minnie was competent when the deed was executed, and whether the deed sufficiently described the three tracts to be transferred.[4] It is from this order that August Jr. appeals.

---

[3] An attorney ad litem representing Gary Meduna's children and living descendants, who were named as interest holders in the deed, was also present at the hearing.

[4] The court explained that the purpose of the hearing was to "take up the issue of the rule against perpetuities," which the court "was raising [] on its own Motion and notified the parties of that." The court also emphasized that the hearing was not a summary judgment hearing, and thus, the court's ruling was not based on an absence of a material fact issue. Rather, "as a matter of law," because the deed violated the rule against perpetuities, the deed was void, and consequently, there was no valid deed that could have been delivered. So, explained the court, the fact issue of whether the deed was ever delivered was moot, and no evidence regarding that issue was necessary.

**DISCUSSION**

**Standard of Review**

When, as here, a trial court determines legal principles, the trial court has no discretion to determine the law or to apply the law to the facts incorrectly. *Gutierrez v. Rodriguez*, 30 S.W.3d 558, 560 (Tex. App.—Texarkana 2000, no pet.); *Methodist Home v. Marshall*, 830 S.W.2d 220, 223 (Tex. App.—Dallas 1992, orig. proceeding). We review with little deference a trial court's determination of legal principles that control its ruling. *Gutierrez*, 30 S.W.3d at 560. A trial court abuses its discretion when it clearly fails to analyze or apply the law correctly. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

The trial court recited in its order declaring the deed void that the bases for its decision were that the deed (1) imposes an unreasonable restraint on alienation and (2) violates the rule against perpetuities. On appeal, August Jr. challenges both of these determinations, and in the alternative, argues that even if the trial court were correct in finding a restraint on alienation and a violation of the rule against perpetuities, neither of these are grounds for voiding the entire deed. We begin our discussion by first addressing whether the deed imposes an unreasonable restraint on alienation.

**Unreasonable Restraint on Alienation**

The challenged provision states:

It is further reserved hereunder that if any owner of any interest in the herein described property desires to alienate his interest in the property, or any part thereof, that he must first offer his entire interest in the property to all of the then existing heirs, per stirpes, as set forth herein, for the total price of $5,000.00. If such offer is not accepted by all or part of the surviving heirs to which it is offered, for a period

5

of thirty (30) days, such offering heir may then alienate the property in such manner and for such consideration as they may in their own discretion determine.

The rule against unreasonable restraints on alienation was created to prevent the tying up of property. *Randolph v. Terrell*, 768 S.W.2d 736, 737 (Tex. App.—Tyler 1987, writ denied). Alienability is a legal incident of property, and restraints against it are generally contrary to public policy. *Trustees of Casa View Assembly of God Church v. Williams*, 414 S.W.2d 697, 702 (Tex. Civ. App.—Austin 1967, no writ). Restraints on alienation are generally classified as either disabling, promissory, or forfeiture restraints. *Mattern v. Herzon*, 367 S.W.2d 312, 319 (Tex. 1963).

The provision in this deed—requiring an interest owner to offer for sale his interest in the property to existing heirs for the price of $5,000 before selling it to anyone else—is not an absolute restraint on alienation. Rather, it creates for the "existing heirs" a right of first refusal to purchase the interest in the property for a fixed price. A right of first refusal, also referred to as a preemptive right, can operate as an indirect restraint on alienation. *Williams v. Williams*, 73 S.W.3d 376, 379 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Under the Restatement,[5] a provision such as the one at issue here does not constitute a restraint on alienation if the right of first refusal is reasonable in terms of (1) the price for which it must be offered, and (2) the time allowed for the exercise of the right. *Randolph*, 768 S.W.2d at 739 (quoting *Restatement (Second) of Property* § 4.4 (1981)). If, however, it fails to satisfy either

---

[5] Texas courts have historically looked to the Restatement for guidance in determining whether a conveyance violates the rule against restraints on alienation. *Deviney v. NationsBank*, 993 S.W.2d 443, 449 (Tex. App.—Waco 1999, pet. denied).

6

of these two requirements, it is a restraint on alienation, and we must then determine whether it is reasonable. *Id.*

The provision here states that if *any* interest owner of the property conveyed desires to sell his interest, he must first offer it to the "surviving heirs" for $5,000. The obligation to offer the property for sale to the surviving heirs is not limited in duration, nor is it limited to any specific interest owner or grantee; it appears to apply to all who benefit from the deed. Thus, the provision could obligate interest owners of the property indefinitely. In several years, the amount of $5,000 may be of such little value that no interest owner would be willing to attempt to sell his interest at this price. *See Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 862 (Tex. App.—Dallas 1994, no writ) (holding fixed price option unreasonable restraint on alienation as matter of law); *Randolph*, 768 S.W.2d at 739 (holding fixed price option creates restraint on alienation); *Gray v. Vandver*, 623 S.W.2d 172, 174 (Tex. App.—Beaumont 1981, no writ) (holding fixed price option unreasonable restraint on alienation as matter of law). Thus, we conclude that the fixed price of $5,000 is unreasonable, and the right of first refusal provision constitutes a restraint on alienation. We must now determine whether the restraint is reasonable. *See Randolph*, 768 S.W.2d at 739 (preemptive provisions that are restraints on alienation are not invalid per se).

The provision in this case is analogous to a promissory restraint on alienation. *See Mattern*, 367 S.W.2d at 319 n.4 (promissory restraint is one that imposes contractual liability for breach of an agreement not to convey). To determine whether a promissory restraint on alienation is valid, we must consider six factors—whether:

(1)  the restraint is limited in duration;

7

(2) the restraint is limited to allow a substantial variety of types of transfers to be employed;

(3) the restraint is limited as to the number of persons to whom transfer is prohibited;

(4) the restraint is such that it tends to increase the value of the property involved;

(5) the restraint is imposed on an interest that is not otherwise readily marketable; or

(6) the restraint is imposed on property that is not readily marketable.

*Randolph*, 768 S.W.2d at 738 (quoting *Restatement (Second) of Property* § 4.2(3)).  In addition, the supreme court has instructed that before an option to purchase may be stricken from a conveyance instrument, it must appear that the option bears some relationship to the evil that the rules prohibiting unreasonable restraints on alienation are designed to prevent.[6]  *Mattern*, 367 S.W.2d at 320.

---

[6] The rule serves at least three purposes:

(1) to balance the current property owner's desire to prolong control over the property and a latter owner's desire to be free from the dead hand;

(2) to contribute to better utilization of society's wealth by reducing fear from uncertain investments and assisting in assets flowing to those who would put them to their best use; and

(3) to keep the property available to satisfy the current exigencies of the owner and stimulate the competitive theory basis of the economy.

*Procter*, 884 S.W.2d at 862.

The main problem with the provision in this deed is that it is not limited in duration.[7]

August Jr. refers us to *Mattern* for support in arguing that this Court should construe the provision as limited to a reasonable period of time. In *Mattern*, the supreme court construed a will executed by the Matterns that devised certain property to their children. *Mattern*, 367 S.W.2d at 313. The will included a provision that allowed one of the children, Chris Mattern, the right to purchase from the other children their interest in the property for a sum certain. *Id.* at 313-14. The court construed the provision so as to limit it to a reasonable time within which Chris could exercise his option, namely within Chris's lifetime. Having so construed the provision, the court held that it did not constitute an unreasonable restraint on alienation. *Id.* at 318-19.

The provision in the deed before us, however, cannot be so construed. There is nothing in the provision suggesting that the grantors' intent was to limit this indirect restraint on alienation to a certain reasonable period of time; rather, it appears to apply indefinitely. But the indefinite duration of the restraint is not the only problem. As explained above, the obligation to offer for sale one's interest in the property extends to every interest owner. *Cf. Deviney v. NationsBank*, 993 S.W.2d 443, 451 (Tex. App.—Waco 1999, pet. denied). (holding that because restraint is limited to the life estate interest owners, it is not unreasonable). Thus, unlike in *Mattern*, the obligation could extend to Gary's children. And finally, the provision does not adequately define

---

[7] Some courts have considered the validity of an indirect restraint on alienation by applying the rule against perpetuities. *See, e.g.*, *Mattern*, 367 S.W.2d at 315-19; *Trustees of Casa View Assembly of God Church v. Williams*, 414 S.W.2d 697, 701-02 (Tex. Civ. App.—Austin 1967, no writ); *see also Restatement (Second) of Prop.: Donative Transfers* introductory note. Because the indirect restraint at issue here is of an indefinite duration and applies to all interest owners, this restraint would appear to violate the rule against perpetuities. The parties, however, do not allege that the indirect restraint violates that rule.

9

to whom the interest owners must offer their interests. It merely refers to "then existing heirs," yet it does not explain whose heirs, nor when those heirs should be identified.[8]

We conclude that this provision constitutes an unreasonable restraint on alienation and that it is contrary to the purposes that the rule against unreasonable restraints was designed to protect. An unreasonable restraint on alienation is void and unenforceable. *See, e.g.*, *Gray*, 623 S.W.2d at 174 (clause in deed imposing unreasonable restraint on alienation is void). It does not, however, render the entire deed void. Thus, we agree with August Jr.'s contention that the trial court erred in declaring the entire deed void based on the deed's imposition of an unreasonable restraint on alienation. The proper remedy would have been to render only the provision void. *See Procter*, 884 S.W.2d at 862; *Randolph*, 768 S.W.2d at 737; *Williams*, 414 S.W.2d at 702.

**Rule Against Perpetuities**

August Jr. argues by his second issue that the trial court erred in concluding that the deed violates the rule against perpetuities. By his third issue, he posits that even if some of the attempted conveyances violated the rule against perpetuities, the trial court erred in declaring the entire deed void instead of reforming it to comply with the rule and reflect the intent of the grantors.

The deed conveys life estate interests in three tracts of land, one to each of the grantors' three children, reserving a life estate[9] in grantors, now only Minnie. The life estate interests

---

[8] We note that presently, Minnie is still alive. Thus, if any of the interest owners currently desired to alienate their life estate interests in the property, it would be impossible to identify Minnie's heirs, if the term "then existing heirs" does refer to the grantors' heirs.

[9] "A life estate is created by words showing intent to give the right to possess, use, and enjoy the property during life." *Cooley v. Williams*, 31 S.W.3d 810, 813 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

conveyed to each of the children are followed by successive life estates to the children of Gary

Meduna and culminate in fee simple[10] conveyances to Gary's living descendants:

> The conveyance herein to Ruth Ann Holder is for life, then to August Meduna, Jr. and Gary Meduna, Sr. an undivided one-half interest for life, then to Gary Meduna, Sr.'s children for life and t[h]en in successive life estates until the perpetuities period expires, at which time TRACT I shall be distributed to Gary Meduna, Sr.'s living descendants.

> The conveyance herein to August Meduna, Jr. is for life, then to Gary Meduna, Sr. for life, then to Gary Meduna, Sr.'s children for life and then in successive life estates until the perpetuities period expires, at which time TRACT II shall be distributed to Gary Meduna, Sr.'s living descendants.

> The conveyance herein to Gary Meduna, Sr. is for life, then to Gary Meduna, Sr.'s children for life, then in successive life estates until the perpetuities period expires, at which time TRACT III shall be distributed to Gary Meduna, Sr.'s living descendants.

A perpetuity is the state of continuing forever; in real estate, control of ownership that never ends would create an inalienable interest that could never be transferred to another. Perpetuities are prohibited by the Texas Constitution. Tex. Const. art. I, § 26 (perpetuities are contrary to free government and shall never be allowed). Courts enforce this prohibition by applying the rule against perpetuities. *Hamman v. Bright & Co.*, 924 S.W.2d 168, 171 (Tex. App.—Amarillo 1996), *writ granted w.r.m.*, 938 S.W.2d 718 (Tex. 1997). Under the rule, no interest is valid unless it must vest, if at all, within twenty-one years after the death of some life or lives in being at the time of the creation of the interest. *Id.* (citing *Peveto v. Starkey*, 645 S.W.2d 770, 772 (Tex. 1982); *Foshee v. Republic Nat'l Bank of Dallas*, 617 S.W.2d 675, 677 (Tex. 1981)).

---

[10] A fee simple estate is one in which the owner has unlimited power of disposition in perpetuity without condition or limitation. *Cooley*, 31 S.W.3d at 813.

The rule relates only to the vesting of estates or interests, not vesting of possession, and is not applicable to present interests or future interests that vest at their creation. *Id.* The word "vest" refers to an immediate, fixed right of present or future enjoyment of the estate or interest; the estate or interest may vest in interest before it vests in possession. *Hunt v. Carroll*, 157 S.W.2d 429, 436 (Tex. Civ. App.—Beaumont 1941, writ dism'd).

The rule against perpetuities is a rule of property and not one of construction. *Bagby v. Bredthauer*, 627 S.W.2d 190, 194 (Tex. App.—Austin 1981, no writ). The interpretation of a written instrument or instruments, however, is ordinarily required for application of the rule. *Id.* Texas law favors a construction allowing vesting at the earliest possible time. *McGill v. Johnson*, 799 S.W.2d 673, 675 (Tex. 1990). Furthermore, courts will not construe an interest as contingent when it reasonably can be construed as vested. *Id.* If the instrument of conveyance is capable of two constructions, one of which will give effect to the whole of the instrument, while the other would defeat it in whole or in part, courts favor the construction that saves the validity of the instrument rather than one that renders it void. *Bagby*, 627 S.W.2d at 194. Courts may refer to the intention of the grantor, and if a doubt exists as to that intention, the interest or estate will be held to be vested if reasonably within the language of the instrument. *Id.*

We begin our review by examining the challenged conveyances as of the date the deed was executed.[11] The conveyances are void if by any possible contingency the interests could

---

[11] August Jr. states in his brief that the rule against perpetuities is applied as of the date of the delivery of the deed, citing *Clarke v. Clarke*, 46 S.W.2d 658 (Tex. 1932). In this case, there was no evidence presented regarding the date of delivery of the deed. Therefore, we will look to the date that the deed was signed for purposes of applying the rule against perpetuities.

vest outside the perpetuities period. To determine whether the conveyances violate the rule, we must

consider each conveyance individually.

### Tract I

Beginning with Tract I, the conveyance is to Ruth for life (although her right of

possession is postponed until after the death of August Sr. and Minnie), then to August Jr. and Gary

for their lives. The life estates to August Jr. and Gary do not violate the rule, for they have vested

remainders for life, although they may not enjoy possession until after both Minnie and Ruth die.[12]

*See McGill*, 799 S.W.2d at 675 n.2 (quoting *Rust v. Rust*, 211 S.W.2d 262, 267 (Tex. Civ.

App.—Austin 1948), *aff'd*, 214 S.W.2d 462, and noting that devise by A to B for life, remainder at

his death to C, creates vested remainder in C upon A's death, subject to B's life estate, though right

of possession begins at B's death); *Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio

1997, no pet.) ("It is well settled that a remainder is vested when there is a person in being at the

creation of the interest who would have a right to immediate possession upon termination of the

intermediate estate.").

Following the life estates to August Jr. and Gary, the deed grants life estates in Tract

I to Gary's children.[13] This conveyance also survives the rule against perpetuities. It is unclear from

---

[12] Gary and August Jr.'s life estate interests are also known as vested remainders subject to complete defeasance, because if either one of them dies before Ruth dies, his life estate interest will expire.

[13] The conveyance to Gary's children constitutes a class gift—one that grants property to a group of persons bearing a certain relationship to the grantor or to each other. *See Wilkes v. Wilkes*, 488 S.W.2d 398, 403 (Tex. 1972) (a class is defined as a group of several persons who share the same description and have the same relationship to testator or to each other); *Briggs v. Peebles*, 188 S.W.2d 147, 149-50 (Tex. 1945) (an essential requisite of a gift to a class is that the number of

13

the record whether Gary already had children at the time the deed was executed. It is also unclear if both Gary and August Jr. must die before Gary's children take their life estates, or whether the children share an undivided one-half interest with the survivor of the two until the other dies. We will assume for purposes of our discussion, however, that both Gary and August Jr. must die before the property passes to Gary's children for life.[14] *Cf. Sellers v. Powers*, 426 S.W.2d 533, 535-36 (Tex. 1968) (construing will to convey life estate in testator's two children and upon the death of one of the children, testator's grandchildren take life estate in undivided one-half interest of property together with the testator's surviving child until that child dies). If Gary had children at the time of execution of the deed, those children had a vested remainder for life in Tract I. Even if Gary had no children at the time of execution of the deed, however, he would either have at least one child or none by the time he died. Thus, Gary's children's interests would vest (or fail) by the time of the death of a life in being when the deed was executed.

It is the subsequent conveyance to Gary's living descendants that must fail as it violates the rule against perpetuities.[15] Assuming that Gary already had a child at the time of the

---

persons in the class be uncertain when the gift is made); *Sanderson v. First Nat'l Bank in Dallas*, 446 S.W.2d 720, 724 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) (uncertainty requirement may be satisfied by possibility of future increase or decrease in number of class).

[14] Neither party argues that this part of the deed is ambiguous. Our assumption that both August Jr. and Gary must die before their interests pass to Gary's children should therefore not be construed as a binding interpretation of the deed when the case is remanded to the trial court.

[15] It is unclear what the phrase "and t[h]en in successive life estates until the perpetuities period expires" was intended to mean in this deed. For the sake of simplicity, we do not construe the phrase in our analysis, for it could in no way affect the attempted conveyance to Gary's living descendants to save it from the rule against perpetuities, and in fact, may actually bolster the argument that the attempted gift violates the rule, if applied as intended.

conveyance, it is possible Gary might have another child, one born after the effective date of the deed (Gary's "unborn child"). Gary's unborn child might outlive his siblings, as well as Gary, August Jr., and Ruth, by more than twenty-one years and could have a child of his own, or an "unborn grandchild" of Gary. The unborn grandchild's interest would therefore vest more than twenty-one years after any lives in being at the time of the conveyance. *See id.* at 535 (because testator's unborn grandchild born after death of testator might outlive his joint tenants by more than twenty-one years and might have a child of his own, the unborn great-grandchild's interest would not vest within the permissible period). Thus, the gift to the "living descendants" of Gary must fail.[16]

*Tract II*

The grant of Tract II to August Jr. is almost identical to the grant to Ruth—Tract II is conveyed to August Jr. for life, subject to August Sr. and Minnie's life estate. Upon August Jr.'s death, Gary receives a life estate in Tract II, and upon his death, his children receive a life estate. For the reasons discussed above, the life estate in Gary does not violate the rule against perpetuities, nor does the life estate to Gary's children, but the subsequent attempted conveyance to Gary's living descendants must fail for the reasons set forth above.

---

[16] August Jr. argues that section 5.042 of the property code allows a gift to vest in a class member even if the class member is not known. *See* Tex. Prop. Code Ann. § 5.042(c) (West Supp. 2003). The title of section 5.042 is "Abolition of Common-Law Rules," yet it does not include an abolition of the common-law rule against perpetuities. Subsection (c) states that the failure of a conveyor to describe a person in a conveyance other than as a member of a class does not affect the person's right to take. *Id.* We interpret section 5.042(c) as allowing a conveyance to an unknown member of a class, *within the limits of the rule against perpetuities*.

15

*Tract III*

Finally, a life estate in Tract III is conveyed to Gary, subject to August Sr. and Minnie's life estates. At Gary's death, Tract III passes to his children for life. None of these conveyances violates the rule against perpetuities, for even if Gary did not have children at the time of the conveyance, he will either have children or not by the time he dies, which is within the period of a life in being at the time the deed was executed. The remainder interest to Gary's living descendants again fails, for Gary could have another child born after the effective date of the conveyance, who in turn, could survive his siblings by more than twenty-one years and then give birth to Gary's sole living descendant. If this were the case, the interest of Gary's living descendant would not vest until more than twenty-one years after any lives in being at the time the deed was executed. Thus, this conveyance of Tract III to Gary's living descendants must fail. We therefore overrule August Jr.'s second issue because some of the attempted conveyances violate the rule against perpetuities and support the trial court's determination.

Under the property code, if the attempted conveyance of an interest in property violates or partially violates the rule against perpetuities, the court shall enforce the provisions that do not violate the rule and shall reform or construe those provisions that do violate the rule, to the extent possible, so as to effectuate the grantor's intent without violating the rule. Tex. Prop. Code Ann. § 5.043 (West Supp. 2003). In accordance with the statute, and after applying the rule against perpetuities, the interests that remain are as follows:

> Tract I: a life estate in Ruth (subject to Minnie's life estate), followed by a life estate in August Jr. and Gary, followed by a life estate in Gary's children.

16

Tract II: a life estate in August Jr., followed by a life estate in Gary, then a life estate in Gary's children.

Tract III: a life estate in Gary, followed by a life estate in his children.

Although the attempted fee simple conveyances to Gary's living descendants fail, because the other conveyances do not offend the rule against perpetuities, the trial court erred in declaring the entire deed void. Instead, the trial court should have struck those conveyances that violate the rule, enforced those that do not, and to the extent possible, reformed the deed to effectuate the grantors' intent. August Jr. argues that if this Court determines that the attempted conveyances violate the rule against perpetuities, this Court should construe the deed to vest fee simple title in Gary's children following the life estates in Ruth, August Jr., and Gary. The trial court, however, is in a better position to develop the evidence, determine the intent of the grantors, and reform the deed to reflect that intent. Accordingly, we sustain August Jr.'s third issue; the trial court erred in declaring the entire deed void rather than enforcing the valid conveyances, striking the invalid ones, and reforming the deed to reflect the grantors' intent.

**Lack of Property Description**

At the hearing before the trial court, Ruth raised at least three other attacks on the validity of the deed, which the trial court did not address: the lack of a property description of the three tracts, failure of delivery, and Minnie's incapacity at the time of execution. Ruth contends on appeal that the deed's failure to describe the property with sufficient clarity provides an additional basis for this Court to affirm the trial court's judgment rendering the deed void.

The deed includes the following description of the property to be conveyed:

17

> To Ruth Ann Holder all of <u>TRACT I</u> out of that certain tract or parcel of land conveyed to August Meduna and wife, Minnie Meduna, a part of Musgrove Evans League, Bastrop County, Texas, recorded April 1, 1953, Vol. 136, pages 395-397, Deed Records of Bastrop County, Texas, and described by metes and bounds as <u>TRACT I</u> in Exhibit A which is attached hereto and made a part hereof for all purposes.[17]

No Exhibit A was attached to the deed or introduced into evidence. Thus, the trial court had before it only a description of the entire parcel that was to be subdivided into three distinct tracts, but no description of the three individual tracts.

The statute of frauds requires that all conveyances of real property be in writing and signed by the party to be charged. *Willacy County Water Control & Improvement Dist. v. Todd*, 255 S.W.2d 320, 323 (Tex. Civ. App.—San Antonio 1952, writ ref'd n.r.e.); *see also* Tex. Bus. & Com. Code Ann. § 26.01 (West 2002). Furthermore, to satisfy the statute of frauds the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 909 (Tex. 1982). Generally, if the instrument containing the reference has enough information to enable a person to identify the particular property to the exclusion of all others, the reference and description are sufficient to satisfy the statute of frauds. *Harlan v. Vetter*, 732 S.W.2d 390, 394 (Tex. App.—Eastland 1987, writ ref'd n.r.e.). Where a deed purports to convey land, but describes the tract only by quantity and as being part of a larger parcel, with nothing to identify what specific portion of the larger parcel is intended to be conveyed, the

---

[17] The descriptions of Tract II and Tract III are likewise "described" in Exhibit A, which is not attached to the deed.

deed is void for uncertainty of description. *Smith v. Sorelle*, 87 S.W.2d 703, 705 (Tex. 1935); *Lewis v. Adams*, 979 S.W.2d 831, 835 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Although the deed included in the appellate record includes no description of the three distinct tracts to be conveyed, the trial court informed the parties that the only issue to be considered at the hearing was whether the deed violated the rule against perpetuities and other unreasonable restraints on alienation. The parties provided no evidence or legal argument on any other issue. Furthermore, the court's final order specifies that the bases for its ruling are that the deed violated the rule against perpetuities and imposed an unreasonable restraint on alienation. We are loathe to render judgment declaring the deed void for lack of a property description when the parties did not fully develop the evidence with regard to this issue. Therefore, because we hold that the trial court erred in declaring the deed void based on the two bases specified in its order, we remand the cause to the trial court. On remand, the trial court must determine the validity of the deed, including the sufficiency of the property description, Minnie's capacity at the time of execution, and whether delivery occurred. If the court resolves these issues in favor of validity, the court should then strike the restraint on alienation and reform the deed to comply with the rule against perpetuities in a manner that best reflects the intention of the grantors.

## CONCLUSION

Although we affirm the trial court's determination that the deed violated the rule against perpetuities and imposed an unreasonable restraint on alienation, we hold that the trial court erred in declaring the entire deed void based on these determinations. We therefore reverse the trial court's judgment and remand the cause for a full hearing on all issues challenging the deed's validity.

19

On remand, if the trial court determines that the deed is valid, the court must then strike the unreasonable restraint and reform the deed to comply with the rule against perpetuities in light of the grantors' intention.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed:  December 18, 2003